**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Estate of Himoud Saed Atban<br>Baghdad, Iraq | ) )<br>) Case No.<br>) |
| Estate of Usama Fadhil Abbass<br>Baghdad, Iraq | ) **JURY DEMAND**<br>) ) |
| Estate of Oday Ismail Ibraheem<br>Baghdad, Iraq | ) ) ) |
| Talib Mutlaq Deewan<br>Baghdad, Iraq | ) ) ) |
| Plaintiffs, | ) ) |
| v.<br>Blackwater USA and all of its affiliated companies and divisions, including Blackwater Security Consulting, LLC, Blackwater Lodge and Training Center, Blackwater Security Consulting, Blackwater Canine, Blackwater Armor and Targets, Blackwater Logistics, Blackwater Airships, Raven Development, Aviation Worldwide Services, Presidential Airways, Inc., Greystone Limited, Total Intelligence Solutions LLC, and any other corporations or companies doing business under the Blackwater name<br>1650 Tysons Boulevard<br>Suite 800<br>McLean, Virginia 22102 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| The Prince Group LLC<br>1650 Tysons Boulevard<br>Suite 800<br>McLean, Virginia 22102 | ) ) ) ) ) |
| Erik Prince<br>McLean, Virginia 22102 | ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT

1. This action is being brought against the individual and corporate entities who operate under the name "Blackwater." Blackwater in all of its various corporate incarnations is actually a single private company wholly owned and personally controlled by a man named Erik Prince. Blackwater earns billions of dollars selling mercenary services.

2. On September 16, 2007, heavily-armed Blackwater mercenaries working in Iraq began firing on a crowd of innocent civilians without justification, resulting in multiple deaths and injuries. Three Plaintiffs (Himoud Saed Atban, Usama Fadhil Abbass and Oday Ismail Ibraheem) were among those killed in this massacre; another (Talib Mutlaq Deewan) was among those seriously injured. This senseless slaughter on September 16, 2007, was only the latest incident in Blackwater's lengthy pattern of egregious misconduct in Iraq.

3. Blackwater created and fostered a culture of lawlessness amongst its employees, encouraging them to act in the company's financial interests at the expense of innocent human life. This action seeks compensatory damages to compensate the injured and the families of those gunned down and killed. This action seeks punitive damages in an amount sufficient to punish Erik Prince and his Blackwater companies for their repeated callous killing of innocents.

## PARTIES

4. Plaintiff is the Estate of Himoud Saed Atban. Mr. Atban was a resident of Baghdad until he was shot to death by Blackwater on September 16, 2007. He was the father of three boys, four daughters, including a newborn baby daughter.

5. Plaintiff is the Estate of Usama Fadhil Abbass. Mr. Abbass was a resident of Baghdad until he was shot to death by Blackwater on September 16, 2007. He was the father of four children, two boys and two girls.

6. Plaintiff is the Estate of Oday Ismail Ibraheem. Mr. Ibraheem was a resident of Baghdad until he was shot to death by Blackwater on September 16, 2007. He was the father of three children, one boy and two girls.

7. Plaintiff Talib Mutlaq Deewan is a Baghdad resident who was seriously injured by Blackwater on September 16, 2007. He is the father of three boys and one daughter.

8. Defendant Blackwater USA is a privately-held corporation formed in 1996 or 1997. Blackwater operates under a variety of names and in a variety of corporate forms, including, but not limited to, Blackwater Security Consulting LLC, Blackwater Lodge and Training Center, Inc., Blackwater Canine, Blackwater Armor & Targets, Blackwater Logistics, Blackwater Airships, Raven Development, Aviation Worldwide Services, Presidential Airways, Inc., Greystone Limited, Total Intelligence Solutions LLC, and perhaps others. Reasonable discovery will establish that these entities are not actually separate and independent corporate structures and companies operating as distinct businesses. Rather, Blackwater in all of its various incarnations (hereinafter "Blackwater") is owned and personally controlled by Erik Prince through the vehicle of The Prince Group LLC.

9. Defendant The Prince Group LLC is a holding company that owns Blackwater in all of its various corporate incarnations. The Prince Group is owned by Erik Prince.

10. Defendant Erik Prince owns The Prince Group LLC, which is the holding company that owns Defendant Blackwater in its various incarnations.

11. Reasonable discovery will establish that Blackwater, The Prince Group LLC, and Erik Prince routinely conduct business and enter into contracts in this District. All three entities reside in McLean, Virginia.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity jurisdiction); 28 U.S.C. § 1350 (Alien Tort Statute); and 28 U.S.C. § 1367 (supplemental jurisdiction).

13. Venue is proper pursuant to 28 U.S.C. § 1391(a)(3) and § 1391(b)(2).

## BLACKWATER KILLED AND INJURED PLAINTIFFS AND OTHER INNOCENT BYSTANDERS ON SEPTEMBER 16, 2007

14. Blackwater provides armed forces to protect Department of State personnel in Iraq.

15. On or about September 16, 2007, Blackwater forces shot and killed multiple innocent civilians, including Himoud Saed Atban, Usama Fadhil Abbass and Oday Ismail Ibraheem, in and around a traffic circle known as Nisoor Square.

16. On or about September 16, 2007, Blackwater forces shot at and injured multiple innocent civilians, including Talib Mutlaq Deewan, in and around the same location.

17. As stated by a United States military official on site in Iraq, Blackwater's conduct "was obviously excessive, it was obviously wrong."

18. At the time of the shooting and killings in Nisoor Square, Blackwater was not protecting any State Department official. Blackwater had already dropped off the State Department official under its protection prior to arriving in Nisoor Square.

19. Blackwater had no legitimate reason to open fire on a crowd of innocent civilians. Blackwater began firing without any provocation.

20. One of Blackwater's own guards tried to stop his colleagues from indiscriminately firing upon the crowd of innocent civilians but he was unsuccessful in his efforts.

21.     Blackwater is responsible for the actions of its heavily-armed employees acting in Iraq. The identities of the Blackwater employees who killed and injured innocent persons on September 16, 2007, are known to Blackwater and able to be discovered in this litigation.

22.     Blackwater acted negligently and wrongfully by failing to prevent their employees from engaging in foreseeable and predictable wrongful acts. Blackwater's negligence includes, but is not limited to, failing to take due care in hiring, failing to train, failing to supervise, failing to discipline, and failing to investigate reports of wrongdoing.

### BLACKWATER PERMITS AND ENCOURAGES EXCESSIVE AND UNNCESSARY USE OF DEADLY FORCE

23.     Blackwater has a pattern and practice of recklessness in the use of deadly force.

24.     Blackwater has created and fostered a corporate culture in which excessive and unnecessary use of deadly force by its employees is not investigated or punished in any way.

25.     An Army lieutenant colonel serving in Iraq made the following statement about Blackwater forces to a Washington Post reporter: "They are immature shooters and have very quick trigger fingers. Their tendency is to shoot first and ask questions later."

26.     Another senior United States commander serving in Iraq made the following statement about Blackwater forces to Washington Post reporter: "They often act like cowboys over here,. . . not seeming to play by the same rules everyone else tries to play by." He further stated that they have a "record of recklessness."

27.     Blackwater produced to the Congressional Committee on Oversight and Government Reform ("the Committee") approximately 437 internal "incident reports" that reveal that Blackwater forces in Iraq consistently use excessive and unnecessary force that results in unnecessary deaths and property damage.

28. Blackwater forces consistently and routinely engage in the preemptive and offensive, rather than defensive, use of lethal force. Blackwater's own incident reports reveal that Blackwater forces fire first in 84 percent of the self-reported incidents involving gunfire.

29. A few examples of Blackwater's recklessness suffice: On or about December 24, 2006, Blackwater killed the bodyguard of Iraqi Vice President Adil Abd-al-Mahdi. Blackwater killed the bodyguard by firing multiple shots from a Glock 9 mm pistol directly at him. The New York Times reported that the Blackwater employee who killed the bodyguard is named Andrew J. Moonen.

30. On or about October 24, 2005, Blackwater forces shot and likely killed an innocent civilian bystander. Blackwater forces did not even stop to ascertain whether he had been killed.

31. On or about June 25, 2005, Blackwater forces killed an innocent person standing on the side of the street by shooting him in the chest. He was the father of six children. Blackwater initially failed to report the shooting, and subsequently tried to cover it up.

32. Reasonable discovery is likely to produce evidence of additional killings by Blackwater. Reasonable discovery is also likely to produce evidence that Blackwater on one or more occasions attempted to cover up its killings by paying modest sums (e.g. $15,000) to the families of those Iraqis whom Blackwater forces shot for no reason.

33. The Blackwater reports produced to the Committee reveal that Blackwater forces in Iraq repeatedly and frequently fire shots from moving vehicles without stopping to see if Blackwater has killed anyone.

34. The Blackwater reports produced to the Committee reveal that Blackwater employees repeatedly fail to report wrongful use of force, and consistently lie about excessive uses of force.

35. Reasonable discovery will establish that Blackwater significantly and consistently underreports excessive use of force by its employees in its own documentation. Two former Blackwater employees told a Washington Post reporter that the Blackwater documents produced to the Committee significantly underreported the actual number of shootings. One of these former Blackwater employees stated that his 20-person team in Iraq averaged four to five shootings per week.

36. Blackwater profits financially from its pattern and practice of misuse of deadly force.

37. Reasonable discovery will establish Blackwater heavily markets the fact that it has never had any American official under its protection killed in Iraq. Reasonable discovery will establish that Blackwater views its willingness to kill innocent people as a strategic advantage setting Blackwater apart and above other security companies.

38. Reasonable discovery will establish Blackwater was and is willing to kill innocent bystanders in order to preserve that "no death" statistic for marketing purposes. Blackwater benefits financially from its willingness to kill innocent bystanders.

### BLACKWATER HIRES INDIVIDUALS KNOWN TO BE CRIMINALS

39. Blackwater has been hiring as mercenaries former military officials known to have been involved in human rights abuses in Chile. As reasonable discovery will establish, Blackwater knows that the former Chileans commandos hired by Blackwater received amnesty

from punishment for their wanton disregard of human rights in exchange for being forbidden from taking part in any military or security activities in Chile.

40.  Reasonable discovery is also likely to reveal that Blackwater has been hiring mercenaries from the Philippines, Chile, Nepal, Colombia, Ecuador, El Salvador, Honduras, Panama, Peru, Bulgaria, Poland, Romania, Jordan and perhaps South Africa. Reasonable discovery is likely to reveal that Blackwater hired foreign nationals without regard for the fact that they were forbidden by the laws of their country from serving as mercenaries.

41.  Blackwater retains a sufficient number of mercenaries to be able to provide a willing buyer with a private army.

42.  In 2003, Blackwater president Gary Jackson stated publicly Blackwater's vision: "I would like to have the largest, most professional private army in the world."

43.  In March 2006, during a conference held in Amman, Jordan, Blackwater executive Cofer Black publicly declared that Blackwater was able to deploy a private brigade-sized force to any conflict or crisis zone.

## BLACKWATER ACTIONS HARM THE UNITED STATES

44.  Secretary of Defense William Gates has publicly announced that private mercenary companies, including Blackwater, are interfering with the military's ability to retain trained soldiers because the companies entice soldiers to leave military service with offers of higher pay.

45.  Blackwater's actions on September 16, 2007, are being investigated by the Federal Bureau of Investigation and the Iraqi government.

46.  Blackwater's actions on September 16, 2007, have created serious and substantial difficulties for the United States' diplomatic relationship with Iraq.

47. Although Blackwater holds itself out as cooperating with the ongoing investigations, Blackwater initially refused to permit the United States access to its employees and compound after the September 16, 2007, killings.

48. Blackwater is being investigated by Congressional Committee on Oversight and Government Reform.

49. Blackwater is being investigated by the United States Attorney, Department of Justice, North Carolina. According to press reports, Blackwater is being investigated for having been involved in smuggling weapons into Iraq, which subsequently ended up in the hands of persons designated as terrorists by the United States government.

50. Two Blackwater employees have plead guilty to possessing stolen weapons. These Blackwater employees agreed to cooperate with the United States in investigation of these crimes.

51. Blackwater is harming the United States by its repeated and consistent failure to act in accord with the law of war, the laws of the United States, and international law.

52. Blackwater has earned more than one billion dollars (approximately $1,024,519,018) from the United States during the years 2001 to 2006. Reasonable discovery is likely to establish that Blackwater continues to earn millions of dollars in revenue from the United States.

53. The United States paid Blackwater these substantial sums based on Blackwater's misrepresentations that it was a legitimate company able to conduct itself in a lawful manner. But in fact, Blackwater operates extra-legally, providing heavily-armed mercenaries who flout the laws of this nation and the host nation, Iraq.

54. Blackwater encourages and fosters a culture of lawlessness amongst its employees.

55. Blackwater's actions and omissions resulted in unnecessary carnage and harmed the reputation of the United States throughout the world.

### BLACKWATER DOES NOT HAVE A VALID CONTRACT WITH THE UNITED STATES

56. The Anti-Pinkerton Act, 5 U.S.C. § 1803, prohibits the United States from doing business with "[a]n individual employed by the Pinkerton Detective Agency, or similar organization." The legislative history of the Act makes it clear that a "similar organization" means any mercenary or quasi-mercenary organization.

57. Blackwater constitutes such a "similar organization" and therefore lacks any valid contractual relationships with the United States.

### ERIK PRINCE OPERATES AND CONTROLS THE VARIOUS BLACKWATER ENTITIES AS HIS ALTER EGOS

58. Erik Prince and Al Clark jointly founded Blackwater. However, reasonable discovery will establish that Al Clark departed Blackwater in 2000 because Erik Prince was not willing to maintain reasonable standards of professionalism.

59. Reasonable discovery is also likely to establish that subsequent to Al Clark's departure, Erik Prince assumed complete and total control over Blackwater's operations.

60. Reasonable discovery is likely to establish that the various Blackwater corporate entities were formed merely to reduce legal exposures and do not operate as individual and independent companies outside the control of Erik Prince.

61. Reasonable discovery is likely to establish that the Prince Group LLC was formed merely to shield Erik Prince from any legal and financial consequences for his reckless indifference to the laws of this and other nations.

## DAMAGES

62. Defendants are liable for the extrajudicial killing of Oday Ismail Ibraheem, Himoud Saed Atban and Usama Fadhil Abbass. Defendants are liable for the pain and suffering caused to these gentlemen, as well as the pain and suffering and loss of consortium caused to the family members of these gentlemen.

63. Defendants are liable for the physical and mental injuries caused to Plaintiff Talib Mutlaq Deewan.

64. Plaintiffs seek compensatory and punitive damages in an amount for each individual in excess of the jurisdictional amount set forth in 28 U.S.C. § 1332. Plaintiffs also seek any and all additional remedies (such as attorneys' fees) available under law and equity.

## COUNT ONE
## CLAIM UNDER THE ALIEN TORT STATUTE –
## EXTRAJUDICIAL KILLING

65. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

66. Blackwater's deliberate killings of Oday Ismail Ibraheem, Himoud Saed Atban, and Usama Fadhil Abbass on or about September 16, 2007, were not authorized by the doctrine of self-defense.

67. Blackwater's deliberate killings of Oday Ismail Ibraheem, Himoud Saed Atban, and Usama Fadhil Abbass on or about September 16, 2007, were not authorized by a lawful

judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples.

68. Defendants' misconduct caused grave and foreseeable injuries (namely death) to Oday Ismail Ibraheem, Himoud Saed Atban, and Usama Fadhil Abbass.

69. Defendants are liable for their conduct that led to the extrajudicial killings.

70. Defendants are liable for the harm caused to the family members of the dead. The family members were forced to suffer – and continue to suffer – severe physical and psychological abuse and agony as a result of the extrajudicial killings.

## COUNT TWO
## CLAIM UNDER THE ALIEN TORT STATUTE – WAR CRIMES

71. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

72. Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and constitute war crimes.

73. Defendants' acts took place during a period of armed conflict.

74. Defendants committed war crimes against Plaintiffs.

75. Defendants are liable for their conduct that constitutes war crimes.

76. Defendants' misconduct caused grave and foreseeable injuries to Plaintiffs.

## COUNT THREE
## ASSAULT AND BATTERY

77. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

78. Defendants unlawfully intended to and did inflict immediate injury upon Plaintiffs.

79. Defendants intentionally assaulted, battered, and made other offensive contacts; and aided and abetted the assaulting, battering and offensively contacting, of the Plaintiffs.

80. Plaintiffs did not consent to the offensive contacts. Plaintiffs feared for their personal safety and felt threatened by Defendants' actions.

81. Defendants committed the assaults and batteries.

82. Defendants' acts caused grave and foreseeable damages to Plaintiffs.

## COUNT FOUR
## WRONGFUL DEATH

83. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

84. Defendants' wrongful acts and omissions caused the death of Oday Ismail Ibraheem, Himoud Saed Atban, and Usama Fadhil Abbass..

85. Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to act in the manner that led to the wrongful deaths.

86. The deaths of Oday Ismail Ibraheem, Himoud Saed Atban, and Usama Fadhil Abbass and other persons were the foreseeable result of Defendants' wrongful acts and omissions.

## COUNT FIVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

88. Defendants intentionally inflicted severe emotional distress by way of extreme and outrageous conduct on Plaintiffs and their family members.  Defendants intended or

recklessly disregarding the probability that Plaintiffs would suffer emotional distress when directing offensive conduct toward Plaintiffs or carrying out offensive conduct while aware of Plaintiffs' and their family members' presence.

89. Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to inflict emotional distress on Plaintiffs.

90. Defendants' acts caused grave and foreseeable injuries to Plaintiffs and their family members.

## COUNT SIX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

91. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

92. Defendants negligently inflicted severe emotional distress on Plaintiffs and their family members.

93. Defendants breached a duty to Plaintiffs and others present at the scene of the killings and infliction of bodily injury.

94. Defendants' negligence directly and foreseeably harmed Plaintiffs.

## COUNT SEVEN
## NEGLIGENT HIRING, TRAINING AND SUPERVISION

95. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

96. Defendants acted negligently and directly harmed Plaintiffs by:

(a) failing to take the appropriate steps in hiring proper personnel to perform services;

      (b)    failing to properly screen personnel before their hiring;

      (c)    failing to train personnel properly;

      (d)    failing to investigate allegations of wrongdoing;

      (e)    failing to reprimand for wrongful actions; and

      (f)    negligently permitting repeated lawlessness by employees.

97. Defendants' negligence directly and foreseeably harmed Plaintiffs and their family members.

## PRAYER FOR DAMAGES

98. Plaintiffs and their family members, acting when necessary through their Estates, are entitled to any and all remedies available to them as a result of the conduct alleged herein, including, but not limited to:

      (a)    compensatory damages for death, physical, mental and economic injuries;

      (b)    punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant misconduct and callous disregard for human life; and

      (c)    any attorneys' fees and costs permitted by law.

.

Date: October 11, 2007                                /s/
                                                          Susan L. Burke (D.C. Bar # 414939)
                                                          William T. O'Neil (D.C. Bar # 426107)
                                                          Elizabeth M. Burke
                                                          Katherine R. Hawkins
                                                          BURKE O'NEIL LLC
                                                          4112 Station Street
                                                          Philadelphia, PA 19127
                                                          Telephone:    (215) 971-5058
                                                          Facsimile:    (215) 482-0874

       Michael A. Ratner
       Vincent Warren
       CENTER FOR CONSTITUTIONAL RIGHTS
       666 Broadway, 7th Floor
       New York, NY 10012
       Telephone:    (212) 614-6439
       Facsimile:     (212) 614-6499

       Shereef Hadi Akeel
       AKEEL & VALENTINE, P.C.
       401 South Old Woodward Avenue
       Suite 430
       Birmingham, MI 48009
       Telephone:    (248) 594-9595
       Facsimile:     (248) 594-4477

*Counsel for Plaintiffs*

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| | |
| **(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** **(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **(IN U.S. PLAINTIFF CASES ONLY)** NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)** | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- 1  U.S. Government Plaintiff
- 2  U.S. Government Defendant
- 3  Federal Question (U.S. Government Not a Party)
- 4  Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### A. *Antitrust*

410 Antitrust

### B. *Personal Injury/Malpractice*

- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Medical Malpractice
- 365 Product Liability
- 368 Asbestos Product Liability

### C. *Administrative Agency Review*

**151 Medicare Act**

**Social Security:**
- 861 HIA ((1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g)
- 864 SSID Title XVI
- 865 RSI (405(g)

**Other Statutes**
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 893 Environmental Matters
- 894 Energy Allocation Act
- 890 Other Statutory Actions (If Administrative Agency is Involved)

### D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### E. *General Civil (Other)*    OR    F. *Pro Se General Civil*

**Real Property**
- 210  Land Condemnation
- 220  Foreclosure
- 230  Rent, Lease & Ejectment
- 240  Torts to Land
- 245  Tort Product Liability
- 290  All Other Real Property

**Personal Property**
- 370  Other Fraud
- 371  Truth in Lending
- 380  Other Personal Property Damage
- 385  Property Damage Product Liability

**Bankruptcy**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

**Property Rights**
- 820 Copyrights
- 830 Patent
- 840 Trademark

**Federal Tax Suits**
- 870 Taxes (US plaintiff or defendant
- 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- 610 Agriculture
- 620 Other Food &Drug
- 625 Drug Related Seizure of Property 21 USC 881
- 630 Liquor Laws
- 640 RR & Truck
- 650 Airline Regs
- 660 Occupational Safety/Health
- 690 Other

**Other Statutes**
- 400 State Reapportionment
- 430 Banks & Banking
- 450 Commerce/ICC Rates/etc.
- 460 Deportation

- 470 Racketeer Influenced & Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Satellite TV
- 810 Selective Service
- 850 Securities/Commodities/Exchange
- 875 Customer Challenge 12 USC 3410
- 900 Appeal of fee determination under equal access to Justice
- 950 Constitutionality of State Statutes
- 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| **G.** *Habeas Corpus/ 2255*<br><br>**530 Habeas Corpus-General**<br>**510 Motion/Vacate Sentence** | **H.** *Employment Discrimination*<br><br>**442 Civil Rights-Employment**<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | **I.** *FOIA/PRIVACY ACT*<br><br>**895 Freedom of Information Act**<br>**890 Other Statutory Actions**<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | **J.** *Student Loan*<br><br>**152 Recovery of Defaulted Student Loans**<br>(excluding veterans) |
|---|---|---|---|
| **K.** *Labor/ERISA (non-employment)*<br><br>**710 Fair Labor Standards Act**<br>**720 Labor/Mgmt. Relations**<br>**730 Labor/Mgmt. Reporting & Disclosure Act**<br>**740 Labor Railway Act**<br>**790 Other Labor Litigation**<br>**791 Empl. Ret. Inc. Security Act** | **L.** *Other Civil Rights (non-employment)*<br><br>**441 Voting (if not Voting Rights Act)**<br>**443 Housing/Accommodations**<br>**444 Welfare**<br>**440 Other Civil Rights**<br>**445 American w/Disabilities-Employment**<br>**446 Americans w/Disabilities-Other** | **M.** *Contract*<br><br>**110 Insurance**<br>**120 Marine**<br>**130 Miller Act**<br>**140 Negotiable Instrument**<br>**150 Recovery of Overpayment & Enforcement of Judgment**<br>**153 Recovery of Overpayment of Veteran's Benefits**<br>**160 Stockholder's Suits**<br>**190 Other Contracts**<br>**195 Contract Product Liability**<br>**196 Franchise** | **N.** *Three-Judge Court*<br><br>**441 Civil Rights-Voting**<br>(if Voting Rights Act) |

**V. ORIGIN**

- 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multi district Litigation
- 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23    **DEMAND $**    **JURY DEMAND:**    Check YES only if demanded in complaint    **YES**    **NO**

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    **YES**    **NO**    If yes, please complete related case form.

**DATE**    **SIGNATURE OF ATTORNEY OF RECORD**

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

- **I.** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

- **III.** CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

- **IV.** CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

- **VI.** CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

- **VIII.** RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.