# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Estate of Himoud Saed Abtan<br>Baghdad, Iraq | Case No. 1:07-cv-01831 (RBW) |
| Estate of Usama Fadhil Abbass<br>Baghdad, Iraq | **JURY DEMAND** |
| Estate of Oday Ismail Ibraheem<br>Baghdad, Iraq |  |
| Estate of Dr. Mahasin Mohson Kadhum<br>Baghdad, Iraq |  |
| Estate of Ahmed Hathem Al-Rubaie<br>Baghdad, Iraq |  |
| Talib Mutlaq Deewan<br>Baghdad, Iraq |  |
| Abdulwahab Abdulqadir Al-Qalamchi<br>Baghdad, Iraq |  |
| Plaintiffs, |  |
| v. |  |
| Blackwater Worldwide<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 |  |
| Blackwater USA<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 |  |
| Blackwater Lodge and Training Center, Inc.<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 |  |
| Blackwater Security Consulting, LLC<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 |  |
| Blackwater Armor and Targets, LLC<br>850 Puddin Ridge Road<br>Moyock, North Carolina 27958 |  |
| Blackwater Airships, LLC |  |

# RECEIVED

NOV 2 6 2007

NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT

850 Puddin Ridge Road                    )
Moyock, North Carolina 27958             )
                                         )
Blackwater Logistics, LLC                )
850 Puddin Ridge Road                    )
Moyock, North Carolina 27958             )
                                         )
Blackwater Canine                        )
850 Puddin Ridge Road                    )
Moyock, North Carolina 27958             )
                                         )
Raven Development Group, LLC             )
850 Puddin Ridge Road                    )
Moyock, North Carolina 27958             )
                                         )
Greystone Limited                        )
Total Intelligence Solutions, LLC        )
1650 Tysons Boulevard                    )
Suite 800                                )
McLean, Virginia 22102                   )
                                         )
The Prince Group LLC                     )
1650 Tysons Boulevard                    )
Suite 800                                )
McLean, Virginia 22102                   )
                                         )
EP Investments, LLC                      )
1650 Tysons Boulevard                    )
Suite 800                                )
McLean, Virginia 22102                   )
                                         )
Erik Prince                              )
1650 Tysons Boulevard                    )
Suite 800                                )
McLean, Virginia 22102                   )
                                         )
                                         )
                    Defendants.          )
                                         )

## FIRST AMENDED COMPLAINT

1.      This action is being brought against the individual and corporate entities who

operate under the name "Blackwater." Blackwater in all of its various corporate incarnations is

actually a single private company wholly owned and personally controlled by a man named Erik

Prince.  Blackwater earns billions of dollars selling mercenary services.

2.      On September 16, 2007, heavily-armed Blackwater mercenaries (known in Blackwater parlance as "shooters") working in Iraq began firing on a crowd of innocent civilians without justification, resulting in multiple deaths and injuries. Five Plaintiffs (Himoud Saed Abtan, Usama Fadhil Abbass, Oday Ismail Ibraheem, Dr. Mahasin Mohson Kadhum and Ahmed Hathem Al-Rubaie) were among those killed in this massacre; two others (Talib Mutlaq Deewan and Abdulwahab Abdulqadir Al-Qalamchi) were among those seriously injured. This senseless slaughter on September 16, 2007, was only the latest incident in Blackwater's lengthy pattern of egregious misconduct in Iraq.

3.      Blackwater created and fostered a culture of lawlessness amongst its employees, encouraging them to act in the company's financial interests at the expense of innocent human life. This action seeks compensatory damages to compensate the injured and the families of those gunned down and killed by Blackwater shooters. This action seeks punitive damages in an amount sufficient to punish Erik Prince and his Blackwater companies for their repeated callous killing of innocents.

## PARTIES

4.      Plaintiff is the Estate of Himoud Saed Abtan. Mr. Abtan was a resident of Baghdad until he was shot to death by Blackwater shooters on September 16, 2007. He was the father of three boys, four daughters, including a newborn baby daughter.

5.      Plaintiff is the Estate of Usama Fadhil Abbass. Mr. Abbass was a resident of Baghdad until he was shot to death by Blackwater shooters on September 16, 2007. He was the father of four children, two boys and two girls.

- 3 -

6.      Plaintiff is the Estate of Oday Ismail Ibraheem.  Mr. Ibraheem was a resident of Baghdad until he was shot to death by Blackwater shooters on September 16, 2007.  He was the father of three children, one boy and two girls.

7.      Plaintiff is the Estate of Dr. Mahasin Mohson Kadhum.  Dr. Kadhum was a doctor in Baghdad.  Her son, Ahmed Hathem Al-Rubaie, was shot to death by Blackwater shooters before her eyes.  She was shot to death by Blackwater shooters as she cradled her dead son's body, calling for help.

8.      Plaintiff is the Estate of Ahmed Hathem Al-Rubaie.  Ahmed Hathen Al-Rubaie was a second year medical student and the oldest son of Dr. Mahasin Mohson Kadhum.  He was shot to death by Blackwater shooters on September 16, 2007.

9.      Plaintiff Talib Mutlaq Deewan is a Baghdad resident who was seriously injured by Blackwater shooters on September 16, 2007.  He is the father of three boys and one daughter.

10.     Plaintiff Abdulwahab Abdulqadir Al-Qalamchi is a Baghdad resident who was seriously injured by Blackwater shooters on September 16, 2007.

11.     Erik Prince, a resident of McLean, Virginia, with business offices at 1650 Tysons Boulevard, McLean, Virginia, 22102, personally and wholly owns holding companies known as The Prince Group and EP Investments LLC.  Mr. Prince, through these holding companies, owns and controls the various Blackwater entities, as well as entities known as Greystone and Total Intelligence.

12.     Defendant The Prince Group LLC is a holding company located at 1650 Tysons Boulevard, McLean, Virginia, 22102.

13.     Defendant EP Investments, LLC, is a holding company managed by the Prince Group, LLC.  EP Investments, LLC is located at  1650 Tysons Boulevard, McLean, Virginia, 22102.

14.     Erik Prince, acting through a web of companies operating under the "Blackwater" or "Greystone" or "Total Intelligence" names, earns billions of dollars providing mercenaries (known as "shooters") for hire.  Reasonable discovery will establish that these many entities do not operate with independence, but rather are all owned and personally controlled by Erik Prince acting through the vehicle of The Prince Group LLC and/or EP Investments, LLC.

15.     Defendant Blackwater Worldwide is a privately-held corporation formed in 1996 or 1997 with headquarters located at 850 Puddin Ridge Road, Moyock North Carolina, 27958.

16.     Blackwater Worldwide has at least five separate business units located at 850 Puddin Ridge Road, Moyock, North Carolina, 27958.  These units include Blackwater Lodge and Training Center, Inc., Blackwater Target Systems, Blackwater Security Consulting, Blackwater Canine and Raven Development Group.

17.     Defendant Blackwater USA is an assumed name under which Defendants Blackwater Lodge and Training Center, Inc. conducts business, and is owned by Blackwater Lodge and Training Center, Inc.

18.     Defendant Greystone Ltd. and Total Intelligence Solutions LLP are companies through which Erik Prince conducts his mercenary business.  Greystone Ltd. and Total Intelligence Solutions LLP are located at 1650 Tysons Boulevard, McLean, Virginia, 22102.

19.     Blackwater and its related entities are registered to do business in Delaware, Michigan, Virginia, Louisiana, North Carolina, Georgia, Texas, Connecticut, Florida, Montana, and California.

20.     Reasonable discovery will establish that Erik Prince and his web of wholly-owned companies routinely conduct business and enter into contracts in this District.    Reasonable discovery will establish that Erik Prince and his web of wholly-owned companies earns substantial sums doing business in this District.

### JURISDICTION AND VENUE

21.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity jurisdiction); 28 U.S.C. § 1350 (Alien Tort Statute); and 28 U.S.C. § 1367 (supplemental jurisdiction).

22.     Venue is proper pursuant to 28 U.S.C. § 1391(a)(3) and § 1391(b)(2).

### BLACKWATER KILLED AND INJURED PLAINTIFFS AND OTHER INNOCENT BYSTANDERS ON SEPTEMBER 16, 2007

23.     Blackwater provides armed forces to protect Department of State personnel in Iraq.  These mobile armed forces that accompany diplomats and others in need of protection are consistently referred to by Blackwater management and employees as "shooters."

24.     On or about September 16, 2007, Blackwater shooters shot without justification and killed multiple innocent civilians, including Himoud Saed Abtan, Usama Fadhil Abbass, Oday Ismail Ibraheem Dr. Mahasin Mohson Kadhum and Ahmed Hathem Al-Rubaie, in and around a traffic circle known as Nisoor Square.

25.     On or about September 16, 2007, Blackwater shooters shot without justification at and injured multiple innocent civilians, including Talib Mutlaq Deewan and Abdulwahab Abdulqadir Al-Qalamchi, in and around the same location.

26.     According to United States military and criminal investigators, none of the civilians was armed or taking offensive actions against the Blackwater shooters.

27.    As stated by a United States military official on site in Iraq, Blackwater's conduct "was obviously excessive, it was obviously wrong."

28.    At the time of the shooting and killings in Nisoor Square, Blackwater shooters were not protecting any State Department official.  The Blackwater shooters had already dropped off the State Department official under its protection prior to arriving in Nisoor Square.

29.    Reasonable discovery will establish that, after Blackwater shooters dropped off the State Department official they were guarding, the Tactical Operations Center (manned by both Blackwater and Department of State personnel) ("TOC"), expressly directed the Blackwater shooters to stay with the official and refrain from leaving the secure area.  Reasonable discovery will establish that the Blackwater shooters ignored these directives from the TOC.  Reasonable discovery will establish that Blackwater personnel were obliged to follow directives from the TOC.

30.    Blackwater shooters had no legitimate reason to open fire on a crowd of innocent civilians.  Blackwater shooters began firing without any provocation.

31.    One of Blackwater's own shooters tried to stop his colleagues from indiscriminately firing upon the crowd of innocent civilians but he was unsuccessful in his efforts.

32.    Blackwater is responsible for the actions of its heavily-armed shooters acting in Iraq.  The identities of the Blackwater shooters who killed and injured innocent persons on September 16, 2007, are known to Blackwater and able to be discovered in this litigation.

## BLACKWATER PERMITS AND ENCOURAGES EXCESSIVE AND UNNCESSARY USE OF DEADLY FORCE

33.    Blackwater has a pattern and practice of recklessness in the use of deadly force.

34.    Blackwater has created and fostered a corporate culture in which excessive and unnecessary use of deadly force by its employees is not investigated or punished in any way.

35.    Blackwater routinely sends heavily-armed "shooters" into the streets of Baghdad with the knowledge that some of those "shooters" are chemically influenced by steroids and other judgment-altering substances. Reasonable discovery will establish that Blackwater knew that 25 percent or more of its "shooters" were ingesting steroids or other judgment-altering substances, yet failed to take effective steps to stop the drug use. Reasonable discovery will establish that Blackwater did not conduct any drug-testing of its "shooters" before sending them equipped with heavy weapons into the streets of Baghdad.

36.    An Army lieutenant colonel serving in Iraq made the following statement about Blackwater forces to a Washington Post reporter: "They are immature shooters and have very quick trigger fingers. Their tendency is to shoot first and ask questions later."

37.    Another senior United States commander serving in Iraq made the following statement about Blackwater forces to Washington Post reporter: "They often act like cowboys over here,. . . not seeming to play by the same rules everyone else tries to play by." He further stated that they have a "record of recklessness."

38.    Blackwater produced to the Congressional Committee on Oversight and Government Reform ("the Committee") approximately 437 internal "incident reports" that reveal that Blackwater forces in Iraq consistently use excessive and unnecessary force that results in unnecessary deaths and property damage.

39.    Blackwater forces consistently and routinely engage in the preemptive and offensive, rather than defensive, use of lethal force. Blackwater's own incident reports reveal that Blackwater forces fire first in 84 percent of the self-reported incidents involving gunfire.

40.    A few examples of Blackwater's recklessness suffice:  On or about December 24, 2006, Blackwater killed the bodyguard of Iraqi Vice President Adil Abd-al-Mahdi.  Blackwater killed the bodyguard by firing multiple shots from a Glock 9 mm pistol directly at him.  The New York Times reported that the Blackwater employee who killed the bodyguard is named Andrew J. Moonen.

41.    On or about October 24, 2005, Blackwater forces shot and likely killed an innocent civilian bystander.  Blackwater forces did not even stop to ascertain whether he had been killed.

42.    On or about June 25, 2005, Blackwater forces killed an innocent person standing on the side of the street by shooting him in the chest.  He was the father of six children.  Blackwater initially failed to report the shooting, and subsequently tried to cover it up.

43.    On or about September 13, 2007, Blackwater employees shot and killed Ali Hussamaldeen Ibraheem Al-Bazzaz on Al-Wathba'a street in Baghdad on September 13, 2007.  Four other civilians were injured in this shooting.  Blackwater helicopters were firing from the air at the time of the shooting.

44.    Reasonable discovery is likely to produce evidence of additional killings by Blackwater shooters.  Reasonable discovery is also likely to produce evidence that Blackwater on one or more occasions attempted to cover up its shooters' killings by offering to pay modest sums to the families of those Iraqis whom Blackwater shooters shot for no reason.

45.    The Blackwater reports produced to the Committee reveal that Blackwater shooters in Iraq repeatedly and frequently fire shots from moving vehicles without stopping to see if Blackwater has killed anyone.

46.    The Blackwater reports produced to the Committee reveal that Blackwater

shooters and other employees repeatedly fail to report wrongful use of force, and consistently lie

about excessive uses of force.

47.    Reasonable discovery will establish that Blackwater significantly and consistently

underreports excessive use of force by its employees in its own documentation. Two former

Blackwater employees told a Washington Post reporter that the Blackwater documents produced

to the Committee significantly underreported the actual number of shootings. One of these

former Blackwater shooters stated that his 20-person team in Iraq averaged four to five shootings

per week.

48.    Blackwater profits financially from its pattern and practice of misuse of deadly

force.

49.    Reasonable discovery will establish Blackwater heavily markets the fact that it has

never had any American official under its protection killed in Iraq. Reasonable discovery will

establish that Blackwater views its willingness to kill innocent people as a strategic advantage

setting Blackwater apart and above other security companies.

50.    Reasonable discovery will establish Blackwater was and is willing to kill innocent

bystanders in order to preserve that "no death" statistic for marketing purposes. Blackwater

benefits financially from its willingness to kill innocent bystanders.

## BLACKWATER HIRES INDIVIDUALS
## KNOWN TO BE CRIMINALS

51.    Blackwater, in addition to hiring persons known (or should have been known) to

use steroids and other judgment-altering drugs, has been hiring as mercenaries former military

officials known to have been involved in human rights abuses in Chile. As reasonable discovery

will establish, Blackwater knows that the former Chileans commandos hired by Blackwater received amnesty from punishment for their wanton disregard of human rights in exchange for being forbidden from taking part in any military or security activities in Chile.

52.    Reasonable discovery is also likely to reveal that Blackwater has been hiring mercenaries from the Philippines, Chile, Nepal, Colombia, Ecuador, El Salvador, Honduras, Panama, Peru, Bulgaria, Poland, Romania, Jordan and perhaps South Africa. Reasonable discovery is likely to reveal that Blackwater hired foreign nationals without regard for the fact that they were forbidden by the laws of their country from serving as mercenaries.

53.    Blackwater retains a sufficient number of mercenaries to be able to provide a willing buyer with a private army.

54.    In 2003, Blackwater president Gary Jackson stated publicly Blackwater's vision: "I would like to have the largest, most professional private army in the world."

55.    In March 2006, during a conference held in Amman, Jordan, Blackwater executive Cofer Black publicly declared that Blackwater was able to deploy a private brigade-sized force to any conflict or crisis zone.

## BLACKWATER ACTIONS HARM THE UNITED STATES

56.    Secretary of Defense William Gates has publicly announced that private mercenary companies, including Blackwater, are interfering with the military's ability to retain trained soldiers because the companies entice soldiers to leave military service with offers of higher pay.

57.    Blackwater's actions on September 16, 2007, are being investigated by the United States Department of Justice, United States Federal Bureau of Investigation and the Iraqi government.

58.    Blackwater's actions on September 16, 2007, have created serious and substantial difficulties for the United States' diplomatic relationship with Iraq.

59.    Although Blackwater holds itself out as cooperating with the ongoing investigations, Blackwater initially refused to permit the United States military any access to its employees and compound after the September 16, 2007, killings.

60.    Blackwater is being investigated by Congressional Committee on Oversight and Government Reform.

61.    Blackwater is being investigated by the United States Attorney, Department of Justice, North Carolina.  According to press reports, Blackwater is being investigated for having been involved in smuggling weapons into Iraq, which subsequently ended up in the hands of persons designated as terrorists by the United States government.

62.    Two Blackwater employees have plead guilty to possessing stolen weapons. These Blackwater employees agreed to cooperate with the United States in investigation of these crimes.

63.    Blackwater is harming the United States by its repeated and consistent failure to act in accord with the law of war, the laws of the United States, and international law.

64.    Blackwater has earned more than one billion dollars (approximately $1,024,519,018) from the United States during the years 2001 to 2006.  Reasonable discovery is likely to establish that Blackwater continues to earn millions of dollars in revenue from the United States.

65.    The United States paid Blackwater these substantial sums based on Blackwater's misrepresentations that it was a legitimate company able to conduct itself in a lawful manner.

- 12 -

But in fact, Blackwater operates extra-legally, providing heavily-armed mercenaries who flout the laws of this nation and the host nation, Iraq.

66.    Blackwater encourages and fosters a culture of lawlessness amongst its employees.

67.    Blackwater's actions and omissions resulted in unnecessary carnage and harmed the reputation of the United States throughout the world.

## BLACKWATER DOES NOT HAVE A VALID CONTRACT WITH THE UNITED STATES

68.    The Anti-Pinkerton Act, 5 U.S.C. § 1803, prohibits the United States from doing business with "[a]n individual employed by the Pinkerton Detective Agency, or similar organization." The legislative history of the Act makes it clear that a "similar organization" means any mercenary or quasi-mercenary organization.

69.    Blackwater constitutes such a "similar organization" and therefore lacks any valid contractual relationships with the United States.

## ERIK PRINCE OPERATES AND CONTROLS THE VARIOUS BLACKWATER ENTITIES  AS HIS ALTER EGOS

70.    Erik Prince and Al Clark jointly founded Blackwater. However, reasonable discovery will establish that Al Clark departed Blackwater in 2000 because Erik Prince was not willing to maintain reasonable standards of professionalism.

71.    Reasonable discovery is also likely to establish that subsequent to Al Clark's departure, Erik Prince assumed complete and total control over Blackwater's operations.

72.    Reasonable discovery is likely to establish that the various Blackwater corporate entities were formed merely to reduce legal exposures and do not operate as individual and independent companies outside the control of Erik Prince.

73.    Reasonable discovery is likely to establish that the Prince Group LLC was formed merely to shield Erik Prince from any legal and financial consequences for his reckless indifference to the laws of this and other nations.

## DAMAGES

74.    Defendants are liable for killing Oday Ismail Ibraheem, Himoud Saed Abtan, Usama Fadhil Abbass, Dr. Mahasin Mohson Kadhum and Ahmed Hathem Al-Rubaie. Defendants are liable for the pain and suffering caused to these gentlemen, as well as the pain and suffering and loss of consortium caused to the family members of these gentlemen.

75.    Defendants are liable for the physical and mental injuries caused to Plaintiffs Talib Mutlaq Deewan and Abdulwahab Abdulqadir Al-Qalamchi.

76.    Plaintiffs seek compensatory and punitive damages in an amount for each individual in excess of the jurisdictional amount set forth in 28 U.S.C. § 1332.  Plaintiffs also seek any and all additional remedies (such as attorneys' fees) available under law and equity.

### COUNT ONE
### CLAIM UNDER THE ALIEN TORT STATUTE – WAR CRIMES

77.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

78.    Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and constitute war crimes.

79.    Defendants' acts took place during a period of armed conflict.

80.     Defendants committed war crimes against Plaintiffs.

81.     Defendants are liable for their conduct that constitutes war crimes.

82.     Defendants' misconduct caused grave and foreseeable injuries to Plaintiffs.

## COUNT TWO
## ASSAULT AND BATTERY

83.     All preceding paragraphs are hereby incorporated by reference as if fully set forth

herein.

84.     Defendants unlawfully intended to and did inflict immediate injury upon

Plaintiffs.

85.     Defendants intentionally assaulted, battered, and made other offensive contacts;

and aided and abetted the assaulting, battering and offensively contacting, of the Plaintiffs.

86.     Plaintiffs did not consent to the offensive contacts. Plaintiffs feared for their

personal safety and felt threatened by Defendants' actions.

87.     Defendants committed the assaults and batteries.

88.     Defendants' acts caused grave and foreseeable damages to Plaintiffs.

## COUNT THREE
## WRONGFUL DEATH

89.     All preceding paragraphs are hereby incorporated by reference as if fully set forth

herein.

90.     Defendants' wrongful acts and omissions caused the death of Oday Ismail

Ibraheem, Himoud Saed Abtan, Usama Fadhil Abbass, Dr. Mahasin Mohson Kadhum and

Ahmed Hathem Al-Rubaie.

91.    Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to act in the manner that led to the wrongful deaths.

92.    The deaths of Oday Ismail Ibraheem, Himoud Saed Abtan, Usama Fadhil Abbass, Dr. Mahasin Mohson Kadhum and Ahmed Hathem Al-Rubaie, and other persons were the foreseeable result of Defendants' wrongful acts and omissions.

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

94.    Defendants intentionally inflicted severe emotional distress by way of extreme and outrageous conduct on Plaintiffs and their family members.  Defendants intended or recklessly disregarding the probability that Plaintiffs would suffer emotional distress when directing offensive conduct toward Plaintiffs or carrying out offensive conduct while aware of Plaintiffs' and their family members' presence.

95.    Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to inflict emotional distress on Plaintiffs.

96.    Defendants' acts caused grave and foreseeable injuries to Plaintiffs and their family members.

## COUNT FIVE
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

97.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

- 16 -

98.   Defendants negligently inflicted severe emotional distress on Plaintiffs and their family members.

99.   Defendants breached a duty to Plaintiffs and others present at the scene of the killings and infliction of bodily injury.

100.  Defendants' negligence directly and foreseeably harmed Plaintiffs.

**COUNT SIX**
**NEGLIGENT HIRING, TRAINING AND SUPERVISION**

101.  All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

102.  Defendants acted negligently and directly harmed Plaintiffs by:

(a)   failing to take the appropriate steps in hiring proper personnel to perform services;

(b)   failing to properly screen personnel before their hiring;

(c)   failing to train personnel properly;

(d)   failing to investigate allegations of wrongdoing;

(e)   failing to reprimand for wrongful actions; and

(f)   negligently permitting repeated lawlessness by employees.

103.  Defendants' negligence directly and foreseeably harmed Plaintiffs and their family members.

**PRAYER FOR DAMAGES**

104.  Plaintiffs and their family members, acting when necessary through their Estates, are entitled to any and all remedies available to them as a result of the conduct alleged herein, including, but not limited to:

(a)    compensatory damages for death, physical, mental and economic injuries;

(b)    punitive damages in an amount sufficient to strip Defendants of all of the

revenue and profits earned from their pattern of constant misconduct and callous disregard for

human life; and

(c)    any attorneys' fees and costs permitted by law.


Date:  November 26, 2007

Susan L. Burke (D.C. Bar # 414939)
William T.  O'Neil (D.C. Bar # 426107)
Elizabeth M. Burke
Katherine R. Hawkins
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
Telephone:    (215) 971-5058
Facsimile:    (215) 482-0874

Michael A. Ratner
Vincent Warren
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6439
Facsimile:    (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
Telephone:    (248) 594-9595
Facsimile:    (248) 594-4477

*Counsel for Plaintiffs*