IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ESTATE OF HIMOUD SAED ABTAN**, *et al.* | ) | |
| | ) | Civil Case No. **1:07-cv-01831 (RBW)** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACKWATER WORLDWIDE**, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF VENUE AND TO DISMISS NON-LEGAL ENTITIES

Michael Lackey  (#443362)
Andrew Pincus (#370726)
Peter White  (#468746)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for Defendants*

Dated: March 7, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT ............................................................................................................... 1

I.   Plaintiffs Have Failed To Establish That Venue Is Proper In This Court. ......................... 3

  A.   Plaintiffs do not attempt to justify venue under Section 1391(a)(3), which applies only to lawsuits based solely on diversity jurisdiction. ................................................... 3

  B.   Plaintiffs' second basis for venue, Section 1391(b)(2), is inapplicable........................... 3

  C.   Plaintiffs' hypothetical about venue with different defendants and different pleadings is not properly before the Court............................................................................. 10

II.   Plaintiffs Concede That All Claims Against The Non-Legal Entity Defendants Should Be Dismissed......................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1 (D.D.C. 2003)....................................5

*Adrian v. United States*, No. Civ. A. 04-1721, 2006 WL 763076
    (D.D.C. Mar. 13, 2006)............................................................................................4, 9

*Arbitraje Casa de Cambio, S.A. De C.V. v. United States Postal Service*,
    297 F.Supp.2d 165 (D.D.C. 2003)...............................................................................10

*Belizan v. Hershon*, 434 F.3d 579 (D.C. Cir. 2006) ...................................................................10

*Bell v. Classic Auto Group, Inc.*, No. 04 Civ. 0693, 2005 WL 659196
    (S.D.N.Y. Mar. 21, 2005)...........................................................................................11

*Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993) .........................................................9

*DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14 (D.D.C. 2002) ...........................................11

*Dier v. Madachy*, Civ. A. No. 07-106, 2007 WL 707538
    (D.D.C. Feb. 21, 2007) ..........................................................................................5, 6

*FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3 (D.D.C. 2006)................................7

*Freeman v. Fallin*, 254 F. Supp. 2d 52 (D.D.C. 2003) ..............................................................2

*Great Socialist People's Libyan Arab Jamahiriya v. Miski*,
    496 F. Supp. 2d 137 (D.D.C. 2007) .............................................................................7

*Lamont v. Haig*, 590 F.2d 1124 (D.C. Cir. 1978) .....................................................................6

*Lecs v. Martinsburg Police Dep't, No. Civ. A. 00-2404, 2002 WL 215511
    (D.D.C. Jan. 28, 2002)...............................................................................................9

*Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)....................................................................9

*Quarles v. Gen. Inv. & Dev. Co.*, 260 F.Supp.2d 1 (D.D.C. 2003) ............................................10

*S.L. Sakansky & Assocs., Inc. v. Allied Am. Adjusting Co. of Florida*, No.
    3:05-CV-708-J-32, 2006 WL 948055 (M.D. Fla. Apr. 12, 2006) ...........................................11

*Sharp Elec. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228 (D.C. Cir. 1981) ...................................................................................................................6

*\*State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646 (S.D. Ind. 1996) ...................................................................................................................4

*United States v. Toushin*, 714 F. Supp. 1452 (M.D. Tenn. 1989).....................9

## Statutes

28 U.S.C. § 1391(a)(2)........................................................................................5

28 U.S.C. § 1391(a)(3)................................................................................1, 3, 12

28 U.S.C. § 1391(b)(1) ............................................................................2, 10, 12

28 U.S.C. § 1391(b)(2) ............................................................................... *passim*

28 U.S.C. § 1391(c) .........................................................................................11

28 U.S.C. § 1404..............................................................................................2, 7

28 U.S.C. § 1406(a) .............................................................................................2

Fed. R. Civ. P. 12(b)(3)......................................................................................2

## Miscellaneous

14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3806.1 (2007)........................................................................................4, 5, 7

Jessica Lee, "Behind Fences & Beyond the Law: An Interview with Michael Ratner," THE INDYPENDENT (Feb. 4, 2008) ..............................................1

# ARGUMENT

Plaintiffs' opposition brief offers invective, unsupported accusations, and hyperbole instead of legal argumentation.  We will not burden the Court with detailed responses to Plaintiffs' *ad hominem* attacks.  Those attacks—which mirror the repeated public statements by Plaintiffs' counsel that have continued notwithstanding this Court's *sua sponte* Order[1]—are irrelevant to the legal issue presented by the venue motion before this Court.

Plaintiffs' attempt to divert this Court's attention away from the relevant legal issue is understandable, however, given the lack of support for their effort to establish venue in this District.  Defendants[2] showed in their opening brief, Docket No. 13 ("Defs. Br."), that the Amended Complaint failed to establish any basis for venue in this Court.

Plaintiffs in their opposition brief, Docket No. 14 ("Pls. Opp."), no longer even attempt to justify venue based on 28 U.S.C. § 1391(a)(3)—one of the two provisions cited in the Amended Complaint—nor could they:  Section 1391(a)(3) applies only when a lawsuit is based *solely* on diversity jurisdiction, and therefore is inapposite here.  The provision on which Plaintiffs now rely entirely is 28 U.S.C. § 1391(b)(2), which supports venue only in a district where "a substantial part of the events or omissions giving rise to the claim occurred."  Here, Plaintiffs' claims

---

[1] *See* Docket No. 8 (Order, Dec. 19, 2007); Jessica Lee, "Behind Fences & Beyond the Law: An Interview with Michael Ratner," THE INDYPENDENT (Feb. 4, 2008), http://www.indypendent.org/2008/02/08/behind-fences-beyond-the-law-an-interview-with-michael-ratner/ (last visited Mar. 7, 2008).

[2] Blackwater Worldwide; Blackwater USA; Blackwater Lodge and Training Center, Inc. ("Blackwater Lodge"); Blackwater Security Consulting LLC ("Blackwater Security"); Blackwater Armor and Targets LLC ("Blackwater Armor"); Blackwater Airships LLC ("Blackwater Airships"); Blackwater Logistics LLC ("Blackwater Logistics"); Blackwater Canine; Raven Development Group LLC ("Raven Development"); Greystone Limited ("Greystone"); Total Intelligence Solutions, LLC ("Total Intelligence"); Prince Group LLC ("Prince Group"); EP Investments LLC ("EP Investments"); and Erik Prince (collectively, "Defendants").

rest on their allegation that Defendants committed tortious acts in "a traffic circle known as Nisoor Square" in Baghdad, Iraq, on September 16, 2007. Am. Cmplt. ¶ 24. Section 1391(b)(2)'s "substantial part" requirement would be drained of any meaning if it permitted venue in the District of Columbia with respect to tort claims based on acts alleged to have occurred in Iraq that are asserted by Iraqi citizens.

Because Plaintiffs have established no grounds for venue in this Court and concede that venue would be proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1), the Amended Complaint should be dismissed pursuant to 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3) or, in the alternative, this action should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a). Plaintiffs argue (Pls. Opp. 10-11) against a transfer under 28 U.S.C. § 1404, but Defendants have not invoked that provision, which applies to tranfers *from a district where venue is proper* to another district where venue is proper. 28 U.S.C. § 1404(a). Defendants have requested dismissal, or in the alternative transfer, under 28 U.S.C. § *1406(a),* which applies *when venue is improper*. Plaintiffs do not address Defendants' argument under Section 1406(a). For the reasons set forth in Defendants' opening brief, Defendants urge this Court to dismiss for lack of venue; if this Court determines that venue is proper in the Eastern District of Virginia, which the Court need not do, Defendants still urge dismissal rather than transfer.

Finally, as Plaintiffs concede, all claims against Blackwater Worldwide, Blackwater USA, and Blackwater Canine should be dismissed with prejudice because these are non-legal entities.

## I.   Plaintiffs Have Failed To Establish That Venue Is Proper In This Court.

Plaintiffs have the "obligation to institute the action in a permissible forum." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). They accordingly bear "the burden of establishing that venue is proper." *Id.*; Defs. Br. 2.

### A.   Plaintiffs do not attempt to justify venue under Section 1391(a)(3), which applies only to lawsuits based solely on diversity jurisdiction.

Plaintiffs have abandoned reliance on 28 U.S.C. § 1391(a)(3), the first basis for venue set forth in the Amended Complaint. Am. Cmplt. ¶ 22. That provision applies only to a suit— unlike this one—that is based solely on diversity jurisdiction. Defs. Br. 2-3. Plaintiffs do not address this provision in their opposition or respond to Defendants' argument that it is inapplicable in this case. *See* Pls. Opp. 6 ("The relevant question is whether the District of Columbia is * * * a proper venue under 28 U.S.C. § 1391(b)(2)."). They accordingly have abandoned and therefore waived reliance on Section 1391(a)(3).

### B.   Plaintiffs' second basis for venue, Section 1391(b)(2), is inapplicable.

The second provision cited in the Amended Complaint also provides no basis for venue in this Court. Section 1391(b)(2) authorizes venue in a district where "a substantial part of the events or omissions giving rise to the claim occurred." Here, the "events or omissions giving rise" to Plaintiffs' claims are allegedly tortious actions in Iraq—i.e., that allegedly "[o]n or about September 16, 2007, Blackwater shooters shot without justification and killed multiple innocent civilians * * * in and around a traffic circle known as Nisoor Square." Am. Cmplt. ¶ 24. The events of September 16, 2007 in Baghdad are the "events or omissions giving rise to" Plaintiffs' claims, and ***none*** of these events, much less "a substantial part" of them, occurred in the District

3

of Columbia. Am. Cmplt. ¶¶ 77-103 (asserting causes of action for war crimes (count 1), assault and battery (count 2), wrongful death (count 3), intentional infliction of emotional distress (count 4), negligent infliction of emotional distress (count 5), and negligent hiring and training (count 6)).[3]

Plaintiffs devote most of their argument to establishing that they need not show that ***most*** of the events giving rise to their claims occurred in the District of Columbia. Pls. Opp. 6-7. Defendants have never suggested otherwise. The relevant question is whether Plaintiffs have met their burden of showing that "***a substantial part*** of the events or omissions giving rise to the claim[s] occurred" in the District of Columbia. 28 U.S.C. § 1391(b)(2) (emphasis added).[4]

To meet that burden, Plaintiffs propose an unbelievably expansive construction of Section 1391(b)(2). *See* Pls. Opp. 7-8. They contend that because Defendants are federal contractors and the District of Columbia is "the seat of the federal government," *id.* at 5, venue is appropriate here for any tort in any way related to work performed under a federal contract. That argument is wrong for three separate reasons.

First, notwithstanding Plaintiffs' effort to divert attention to the federal contracts, the claims in this action sound exclusively in tort. It is black letter law that, in a tort suit, the "substantial part" venue inquiry focuses on "where the allegedly tortious actions occurred and the place where the harms were felt." 14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PRO-CEDURE § 3806.1 (2007), 213-215; *see also State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646, 650 (S.D. Ind. 1996) (Barker, C.J.) (distinguishing contract and tort suits on this basis

---

[3] The only count for which some of the allegedly tortious acts may have occurred outside Iraq is count 6 (negligent hiring, training, and supervision). Plaintiffs do not even assert that any hiring or training in the United States—much less "a substantial part"—took place in the District of Columbia.

[4] Plaintiffs also argue that they were not obliged to plead facts supporting venue in their complaint. Pls. Opp. 6-7. That is true, but now that the Defendants have raised the improper venue defense, Plaintiffs must carry their burden of establishing that venue is proper.

under the identical language of Section 1391(a)(2)); *Adrian v. United States*, No. Civ. A. 04-1721, 2006 WL 763076, *2 (D.D.C. Mar. 13, 2006) (Walton, J.) (finding no venue under Section 1391(b)(2) for a *Bivens* claim when "all of the allegedly injurious acts occurred in" another state). Only in contract actions does the inquiry focus on "where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." 14D WRIGHT, MILLER & COOPER § 3806.1 at 205-212.

Second, this Court has rejected the simplistic "but for" logic underlying Plaintiffs' theory of venue. In *Dier v. Madachy*, Civ. A. No. 07-106, 2007 WL 707538, *4 (D.D.C. Feb. 21, 2007) (denying request for reconsideration), a habeas petitioner argued that "a substantial part" of the events giving rise to her claim occurred in the District of Columbia because testimony from a physician who cared for her during hospitalization in the District was a "but for" cause of the later, allegedly actionable events (a guardianship proceeding in Maryland). The court expressly rejected this argument "because the instant Petition does not challenge the events that occurred in the District of Columbia." *Id.*; *see also Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4-5 (D.D.C. 2003) (rejecting a "but for" venue argument regarding a contract negotiated in the District of Columbia under the identical language of Section 1391(a)(2)).

Third, Plaintiffs' proposed rule would produce dramatic changes in venue standards. Certainly any tort claim in any way related to actions by a federal contractor could be brought here, on the theory that "but for" the federal contract, the alleged tort would not have occurred. But Plaintiffs' theory is not limited to federal contractors. Any case involving a tort committed by any sort of contractor or its employees—or a subcontractor or its employees—could be heard in the district in which the initial contract was entered into, even if the contractor, the work, the alleged tort and the subcontract or subcontractor had no relation whatsoever to that district. As in

this case, a plaintiff could argue that the initial contract was a "but for" cause of the alleged tort. A plaintiff injured in an automobile accident, moreover, could argue that venue lay in the district where the defendant purchased the car because "but for" that purchase the accident would not have occurred.

To support their position that this Court should reject *Dier*—and hold instead that a substantial part of the events giving rise to a claim can occur in any district in which "essential links * * * culminating" in those events took place—Plaintiffs rely on three cases. Pls. Opp. 7-8. Each is inapposite.

The first case, *Sharp Elec. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228 (D.C. Cir. 1981), is distinguishable for several reasons. To begin with, *Sharp* interpreted a prior version of Section 1391(b)(2), which was revised in 1990 to address the specific issue that concerned the court in that case—the risk that venue might not be proper in any forum because of the earlier statute's more restrictive language. *Sharp*, 655 F.2d at 1230 (urging the district court to transfer the suit to a more suitable forum, but if that was not possible, to reconsider dismissal in order to "'ensur[e] the existence of at least one forum wherein venue and personal jurisdiction requirements permit multiple-party litigation to proceed'") (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 n.62 (D.C. Cir. 1978) (internal citation omitted)). Here, there is no need to ensure at least one forum where venue is proper because Plaintiffs expressly concede that venue is proper in Virginia. Pls. Opp. 5.[5] Moreover, it is unclear whether *Sharp* even remains good law after the

---

[5] Plaintiffs suggest that Defendants seek dismissal or transfer to obtain the benefit of Virginia's statutory cap on punitive damages. Pls. Opp. 1 n.1, 5. The extent to which District of Columbia or Virginia choice-of-law rules would apply local law to Plaintiffs' tort claims is far from clear. In any event, venue and choice of law are independent legal inquiries. Only the former is at issue here. And Plaintiffs' offer to concede venue in exchange for a waiver of the punitive damages cap (Pls. Opp. 1 n.1) makes clear that Plaintiffs are more interested in forum-shopping for substantive law than in ensuring that this matter is heard in the District of Columbia.

1990 revision of Section 1391(b)(2).  *See* 14D WRIGHT, MILLER & COOPER § 3806 at 187-199 (describing amendment to Section 1391(b)(2)).

Plaintiffs' second case is distinguishable because the allegedly wrongful act—operating websites whose domain names appropriated the Libyan government's "famous marks"—occurred in part in the District of Columbia and its injurious effects were felt there as well. *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137, 144 (D.D.C. 2007) (Walton, J.).[6]  Venue was appropriate in the District of Columbia, this Court held, because "the website is apparently utilized and maintained by a business organization that is both head-quartered and primarily operates in the District of Columbia," the defendant was the executive director and registered agent of that organization, and the defendant had a key meeting with a Libyan government official about use of the relevant domain name in the District of Columbia. *Id.* at 143.  Here, by contrast, neither the wrongful conduct nor the injuries alleged by Plaintiffs occurred in the District of Columbia.

Finally, Plaintiffs cite *FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 11 (D.D.C. 2006), to support their overly broad "but for" proposition that venue is proper in the District of Columbia simply because as government contractors, Defendants must have had some general communications with government officials in the District that were "essential links in a chain of events culminating" in the alleged tortious conduct.  Pls. Opp. 8.  *FC Investment*, how-ever, concerned a fraud action in which the communications that occurred in the District of Co-lumbia ***were part of the fraud*** and thus were at the core of the alleged tortious conduct giving rise to plaintiffs' claims.  441 F. Supp. 2d at 12 (Defendant "is alleged to have played a major

---

[6] The page cited by Plaintiffs refers only to the balancing of conveniences for transfer under Section 1404(a).  Pls. Opp. 7.  Presumably Plaintiffs are relying on the court's earlier discussion of Section 1391(b)(2).

role by inducing Plaintiffs' reliance, reassuring Plaintiffs that they would receive refunds for their investments, and sending Plaintiffs account statements and false information, all directed to [Plaintiff's] District of Columbia office."). Here, Plaintiffs do not explain how any of the tortious acts occurred in the District of Columbia, and the generic communications alleged by Plaintiffs have nothing to do with the allegedly tortious actions—the unjustified killing of civilians in Baghdad, Iraq.[7]

Even if Plaintiffs' legal theory were valid, which it is not, they could not establish the factual predicate for its application. Thus, Plaintiffs suggest that "[t]he relevant Department of State office is located in Washington, D.C. at 2201 C Street, N.W., Washington, D.C." because the Assistant Secretary for the Bureau of Diplomatic Security is located at the C Street address. Pls. Opp. 1 (citing Declaration of William O'Neil, attaching United States Department of State Telephone Directory as Exhibit 1, p. OD-17). But the very same page of the State Department directory Plaintiffs cite shows that the Principal Deputy Assistant Secretary for Diplomatic Security, who is also the Director of the Diplomatic Security Service and thus the responsible official for the contracts on which Plaintiffs place so much emphasis, is located in Virginia. *See* O'Neil Dec., Exhibit 1, p. OD-17; *see also* Declaration of Gary Jackson (attaching "Amendment of Solicitation/Modification of Contract" signed by a contracting officer at the Office of Acquisition Management, PO Box 9115, Rosslyn Station, US Department of State, Arlington, Virginia, 22219).

---

[7] The heading on page two of Plaintiffs' brief suggests that the Amended Complaint alleged that "Prince and Blackwater Made Misrepresentations in this District To Procure Business from the Department of State." Pls. Opp. 2. The Amended Complaint, however, nowhere alleges that any supposed misrepresentations happened "in this District" and Plaintiffs do not submit an affidavit or any other cognizable evidence supporting the allegation in their brief. Moreover, Plaintiffs bring no causes of actions based on misrepresentations to the government and would have no standing to do so.

Plaintiffs also cite allegations about congressional and criminal inquiries in the District of Columbia, but they are irrelevant to the venue analysis. As a general matter, this Court must "carefully * * * guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). More specifically, it is clear that Plaintiffs may not rely on oversight by government agencies to show that "a substantial part" of the events giving rise to their claim occurred here. *See Adrian*, 2006 WL 763076 at *2 (rejecting argument that "a substantial part" of the events giving rise to a *Bivens* claim occurred in the District of Columbia even though plaintiffs alleged that the agent's actions "were sanctioned, approved, or ratified by FBI headquarters in Washington, D.C.") (internal quotation marks omitted); *see also Lecs v. Martinsburg Police Dep't*, No. Civ. A. 00-2404, 2002 WL 215511, *2 (D.D.C. Jan. 28, 2002) (finding no venue under Section 1391(b)(2), even though many of the defendants were government officials residing in the District of Columbia, because plaintiffs did "not specifically allege that *any* Federal Defendant who resides in the District of Columbia unlawfully investigated them, unlawfully released their medical records, or unlawfully defamed them"). And government investigations and other activities in the District of Columbia that occurred *after* the allegedly tortious actions in Iraq could not possibly "giv[e] rise to" Plaintiffs' claims. 28 U.S.C. § 1391(b)(2).

In sum, Plaintiffs have brought claims arising out of alleged torts in Iraq but assert venue in Washington, D.C. because Defendants are federal contractors. Because "a substantial part of the events or omissions giving rise to" Plaintiffs' claims could not possibly have occurred in the District of Columbia, no discovery is needed and the Amended Complaint should be dismissed for lack of venue. *See Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (upholding a denial of jurisdiction-related discovery because the court could "not see what facts additional discovery

could produce that would affect [the] jurisdictional analysis") (internal quotation marks and citation omitted); *see also United States v. Toushin*, 714 F. Supp. 1452, 1460 (M.D. Tenn. 1989) (denying motion for venue-related discovery because the court was disposing of the venue motions and had "no reason to prolong this matter with unnecessary discovery").

### C. Plaintiffs' hypothetical about venue with different defendants and different pleadings is not properly before the Court.

Plaintiffs hint in a footnote that they might dismiss their claims against Mr. Prince. If they did so, they suggest, venue would be proper in this Court under Section 1391(b)(1). Pls. Opp. 9-10 n.4. This suggestion is wrong for three reasons.

First, the Amended Complaint does not assert Section 1391(b)(1) as a basis for venue in the District of Columbia. It "is a dubious proposition at best" that "plaintiffs can amend their complaint" to add a new basis for venue "through a statement in their opposition." *Quarles v. Gen. Inv. & Dev. Co.*, 260 F.Supp.2d 1, 13 n.6 (D.D.C. 2003).

Second, Mr. Prince is still a Defendant in this action. Plaintiffs may move for leave to amend the Amended Complaint and then drop the claims against Mr. Prince. But until they do so, Plaintiffs' non-binding, speculative suggestion of what they are willing to do has absolutely no legal relevance. *See Arbitraje Casa de Cambio, S.A. De C.V. v. United States Postal Service*, 297 F.Supp.2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks and citation omitted); *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (noting that "absent a motion [for leave to amend], there is nothing to 'be freely given'"). This Court should make its decision on the basis of the Amended Complaint before it, not by reference to imaginary pleadings that Plaintiffs have not filed.

Third, even if the Amended Complaint did assert Section 1391(b)(1) as a basis for venue and did not name Mr. Prince as a Defendant, venue would still be improper in the District of Columbia. As a threshold matter, Plaintiffs incorrectly suggest that the corporate Defendants have waived any objection to venue in this Court by not objecting to personal jurisdiction in their initial motion to dismiss. Pls. Opp. 4 n.2. Plaintiffs ignore the only decision on that subject in the District Court for the District of Columbia—which squarely held that a failure to object to personal jurisdiction does *not* waive venue objections for a corporate defendant. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 19 (D.D.C. 2002) (interpreting the plain text of the statute, which provides that a corporate defendant "'shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction *at the time the action is commenced*,'" as requiring "an independent inquiry into the basis for personal jurisdiction") (quoting and adding emphasis to 28 U.S.C. § 1391(c)). This decision rejected the cases relied upon by Plaintiffs, and it has since been expressly relied upon by at least one other federal court, the Southern District of New York. *Bell v. Classic Auto Group, Inc.*, No. 04 Civ. 0693, 2005 WL 659196, *5 (S.D.N.Y. Mar. 21, 2005); *see also S.L. Sakansky & Assocs., Inc. v. Allied Am. Adjusting Co. of Florida*, No. 3:05-CV-708-J-32, 2006 WL 948055, *2 n.3 (M.D. Fla. Apr. 12, 2006) (noting split of authority).[8]

## II. Plaintiffs Concede That All Claims Against The Non-Legal Entity Defendants Should Be Dismissed.

Defendants explained in their opening brief that all claims against Blackwater Worldwide, Blackwater USA, and Blackwater Canine should be dismissed because they are not legal entities. Defs. Br. 11-12. Plaintiffs concede the point but ask that this Court dismiss these claims without

---

[8] Plaintiffs cite *DSMC* in their opposition (see Pls. Opp. 10-11), but fail to bring to the Court's attention the portion of the opinion addressing, and rejecting, their waiver argument.

prejudice. Pls. Opp. 4 n.3. The reason for dismissal, however—that they are not legal entities—does not rest on facts that are subject to change; there simply is no reason to leave the door open to asserting claims against these defendants. The claims accordingly should be dismissed with prejudice.

* * * * *

Plaintiffs and Defendants agree on two points: that Section 1391(a)(3) does *not* support venue in this Court, Defs. Br. 2-3; *cf.* Pls. Opp. 6; and that Section 1391(b)(1) *does* support venue in the Eastern District of Virginia, Defs. Br. 4-8; Pls. Opp. 5. Only one question remains for decision by this Court—whether "a substantial part of the events or omissions giving rise to the claim[s] occur[red]" in the District of Columbia. 28 U.S.C. § 1391(b)(2). Because the answer must be, as a matter of law, that "a substantial part" of the events did not occur in the District of Columbia, this Court should grant Defendants' Motion and enter an order dismissing the claims against all Defendants or, in the alternative, dismissing claims against the non-legal entities and transferring the remaining claims to the U.S. District Court for the Eastern District of Virginia.

Respectfully submitted,

/s/ Michael Lackey
Michael Lackey  (#443362)
Andrew Pincus (#370726)
Peter White  (#468746)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for Defendants*

Dated: March 7, 2008

## CERTIFICATE OF SERVICE

I, Peter White, an attorney, certify that on March 7, 2008, I caused true and correct copies of

the foregoing Reply to be filed with the Clerk of the Court by using the CM/ECF system, which

will send a notice of electronic filing to the following counsel who has registered for receipt of

documents filed in this manner:


William T. O'Neil (426107)
BURKE O'NEIL LLC
4112 Station Street
Philadelphia, PA 19127
(215) 971-5058


In addition, on this same date, I caused the above-mentioned Reply to be served upon the

following counsel of record via first-class mail:


Michael A. Ratner
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6439

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
(248) 594-9595


/s/ Peter White
Peter White
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
*Counsel for Defendants*

DECLARATION OF GARY JACKSON

I, Gary Jackson, subject to penalty of perjury, state the following:

1.      I am President of Blackwater Lodge and Training Center, Inc. ("Blackwater Lodge").

2.      Attached to this Declaration as Exhibit A is a true copy of the signed "Amendment of Solicitation/Modification of Contract" form for the relevant contract between Blackwater Lodge and the Office of Acquisition Management of the United States Department of State.

3.      The address of the Office of Acquisition Management, as listed in Exhibit A, is at Rosslyn Station, Arlington, Virginia.

I have provided this Declaration for use in the *Abtan et al. v. Blackwater Worldwide et al.* and *Albazzaz et al. v. Blackwater Worldwide et al.* lawsuits, both of which I understand are pending in federal court in the District of Columbia.

I declare under penalty of perjury that the foregoing are true and correct.

Executed on:  03.06.08          Signature:

Print Name:  GARY JACKSON

## AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | Page |
|---|---|
| | 1 of 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(If applicable)* |
|---|---|---|---|
| 004 | 04/06/2006 | | |

| 6. ISSUED BY | CODE | LMAQM19 | 7. ADMINISTERED BY *(If other than Item 6)* | CODE | LMAQM19 |
|---|---|---|---|---|---|

OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM)
PO BOX 9115, ROSSLYN STATION, US DEPARTMENT OF STATE
ARLINGTON, VA  UNITED STATES 22219

OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM)
PO BOX 9115, ROSSLYN STATION, US DEPARTMENT OF STATE
ARLINGTON, VA  UNITED STATES 22219

Contact:  Paul Desilets          Telephone:  703-875-4815

| 8. NAME AND ADDRESS OF CONTRACTOR    *(No., street, county, State and Zip Code)* |
|---|

DUNS No: 012418161

BLACKWATER LODGE & TRAINING
850 PUDDIN RIDGE RD,
MOYOCK, NC  UNITED STATES 27958-8867

| CODE | 1 | | FACILITY CODE | |
|---|---|---|---|---|

| | |
|---|---|
| | 9A. AMENDMENT OF SOLICITATION NO. |
| | 9B. DATED *(SEE ITEM 11)* |
| (X) | 10A. MODIFICATION OF CONTRACT/ORDER NO. SAQMPD05D1098 |
| (X) | 10B. DATED *(SEE ITEM 13)* 06/07/2005 |

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

| | The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers | | is extended, | | is not extended. |
|---|---|---|---|---|---|

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

### 12. ACCOUNTING AND APPROPRIATION DATA  *(If required)*
No Funding Information

### 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| ☐ | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| ☐ | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF AUTHORITY OF FAR 43.103(b). |
| ☑ | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: 52.243-1 CHANGES - FIXED PRICE - ALTERNATE I  (APR 1984) |
| ☐ | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:  Contractor ☐ is not, ☒ is required to sign this document and return __1__ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION    *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*
CONTRACT S-AQMPD-05-D-1098 IS HEREBY MODIFIED AS FOLLOWS:

SEE ATTACHED SUMMARY OF CHANGES.

NOTE:  THE FILES WILL BE EMAILED IN LIEU OF MAILING OR FAXING.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)* Paul Desilets |
|---|---|
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. United States of America BY | 16C. DATE SIGNED 4/7/06 |
| *(Signature of person authorized to sign)* | | *(Signature of Contracting Officer)* | |

NSN 7540-01-152-8070
PREVIOUS EDITION
UNUSABLE

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR)
53.243

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | Page 1 of 2 |
|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. 004 | 3. EFFECTIVE DATE 04/06/2006 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|

| 6. ISSUED BY                    CODE  LMAQM19 | 7. ADMINISTERED BY (If other than Item 6)   CODE  LMAQM19 |
|---|---|
| OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM) PO BOX 9115, ROSSLYN STATION, US DEPARTMENT OF STATE ARLINGTON, VA UNITED STATES 22219 | OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM) PO BOX 9115, ROSSLYN STATION, US DEPARTMENT OF STATE ARLINGTON VA UNITED STATES 22219 |

| Contact: Paul Desilets | Telephone 703-875-4815 | 9A. AMENDMENT OF SOLICITATION NO |
|---|---|---|

| 8. NAME AND ADDRESS OF CONTRACTOR   (No. street county State and Zip Code) | | 9B. DATED (SEE ITEM 11) |
|---|---|---|
| DUNS No. 012418161 | | |
| BLACKWATER LODGE & TRAINING 850 PUDDIN RIDGE RD MOYOCK, NC UNITED STATES 27958-8867 | (X) | 10A. MODIFICATION OF CONTRACT/ORDER NO. SAQMPD0501098 |
| | (X) | 10B DATED (SEE ITEM 13) 06/07/2005 |
| CODE  1 | FACILITY CODE | |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended ☐ is not extended

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA   (If required) |
|---|
| No Funding Information |

## 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14 PURSUANT TO THE AUTHORITY OF AUTHORITY OF FAR 43.103(b). |
| ✓ | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF 52.243-1 CHANGES - FIXED PRICE - ALTERNATE I (APR 1984) |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT.  Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION  (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
CONTRACT S-AQMPD-05-D-1098 IS HEREBY MODIFIED AS FOLLOWS:

SEE ATTACHED SUMMARY OF CHANGES.

NOTE: THE FILES WILL BE EMAILED IN LIEU OF MAILING OR FAXING.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) FRED ROITZ, VP of Contracts + Comp | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) Paul Desilets |
|---|---|
| 15B. CONTRACTOR/OFFEROR (Signature of person authorized to sign) | 15C. DATE SIGNED 7 APRIL 2006 | 16B. United States of America BY (Signature of Contracting Officer) | 16C. DATE SIGNED |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

| Line Item Summary | Document Number<br>SAQMPD05D1098-M004 | Title<br>WPPS-Blackwater | Page<br>2 of 2 |
|---|---|---|---|

No Funding Information

| Line<br>Item No. | Description | Quantity | Unit | Unit Price | Total Cost<br>(Includes Discounts) |
|---|---|---|---|---|---|
| | No Changed Line Item Fields | | | | |
| | | | | **Previous Total:** USD | |
| | | | | **Modification Total:** USD | 0.00 |
| | | | | **Grand Total:** USD | |