**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ESTATE OF HIMOUD                        )
SAED ABTAN, et al.,                     )
                                        )
        Plaintiffs,             )
                                        )
    v.                              )   Civil Action No. 07-1831 (RBW)
                                        )
BLACKWATER LODGE                        )
AND TRAINING CENTER, et al.,            )
                                        )
        Defendants.             )
_____)
                                        )
ESTATE OF ALI HUSSAMALDEEN              )
ALBAZZAZ and                            )
ESTATE OF KADHUM KAYIZ AZIZ,            )
                                        )
        Plaintiffs,             )
                                        )
    v.                              )   Civil Action No. 07-2273 (RBW)
                                        )
BLACKWATER LODGE                        )
AND TRAINING CENTER, et al.,            )
                                        )
        Defendants.             )
_____)

**MEMORANDUM OPINION**

       The plaintiffs in these administratively consolidated civil lawsuits are individuals and estates of individuals wounded or killed in one of two shooting incidents: a shooting that occurred on September 9, 2007, in Al Watahba Square, Baghdad, in the Republic of Iraq, First Amended Complaint in Albazzaz v. Blackwater Lodge and Training Ctr., Civil Action No. 07-

2273 (RBW) (D.D.C.) (the "Albazzaz Compl."), ¶ 2,[1] or a shooting that occurred on September 16, 2007, in Nisour Square, Baghdad, Second Amended Complaint in Abtan v. Blackwater Lodge and Training Ctr., Civil Action No. 07-1831 (RBW) (D.D.C.) (the "Abtan Compl."), ¶¶ 4-20.  The plaintiffs seek compensatory and punitive damages against the defendants, Abtan Compl. ¶ 3; Albazzaz Compl. ¶ 3,[2] claiming that the defendants are "liable for killing" the decedents, whose estates have joined in this suit, liable for "the pain and suffering and loss of consortium caused to the family members of these victims," Abtan Compl. ¶ 82; Albazzaz Compl. ¶ 60, and "liable for the physical and mental injuries caused" to the plaintiffs who survived the Nisour Square shooting incident, Abtan Compl. ¶ 83.  Currently before the Court is the defendants' consolidated motion to dismiss or transfer the plaintiffs' cases for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3).[3]  Having carefully considered the plaintiffs' complaints, the defendants' motion, and all memoranda of law and exhibits filed in connection with that motion,[4] the Court concludes for the reasons that follow that it must stay the

---

[1] The Court granted the plaintiffs in Albazzaz leave to amend their initial complaint, but neglected to direct the Clerk of the Court to docket Exhibit 1 to the plaintiffs' motion as the plaintiffs' first amended complaint.  The Court will therefore instruct the Clerk of the Court to docket Exhibit 1 of the plaintiffs' motion as the first amended complaint nunc pro tunc to the date when leave to file the amended complaint was granted and will treat the proposed amended complaint attached as Exhibit 1 of the plaintiffs' motion as the operative complaint in Albazzaz for purposes of this memorandum opinion.

[2] The defendants are Blackwater Lodge and Training Center, Inc., Blackwater Target Systems, Blackwater Security Consulting, and Raven Development Group (collectively "Blackwater"), Abtan Compl. ¶¶ 25-26; Albazzaz Compl. ¶¶ 10-11, as well as Erik Prince, who allegedly "owns and controls the various Blackwater entities," Abtan Compl. ¶ 21; see also Albazzaz Compl. ¶ 6 (same), two holding companies "personally and wholly own[ed]" by Prince, The Prince Group LLC and EP Investments, LLC, Abtan Compl. ¶¶ 21-22; see also Albazzaz Compl. ¶¶ 6-8 (same), and two "companies through which Erik Prince [allegedly] conducts his mercenary business," Greystone Ltd. ("Greystone") and Total Intelligence Solutions LLP ("Total Intelligence"), Abtan Compl. ¶ 26; Albazzaz Compl. ¶ 11.

[3] The plaintiffs have also filed separate motions for leave to file amended complaints.  The Court will stay those motions while the parties engage in any appropriate venue discovery the Court is authorizing.

[4] In addition to the plaintiffs' complaints and the defendants' motion, the Court considered the following documents in reaching its decision: (1) Defendants' Memorandum in Support of Their Motion to Dismiss for Lack of Venue the Second Amended Complaint in Case No. 1:07-cv-01831 and the Amended Complaint in Case No. 07-cv-2273 (the (continued . . . )

defendants' motion so that the plaintiffs may formally request limited venue discovery in this matter.

## I. Background

The following facts are alleged by the plaintiffs in their complaints. "Blackwater provides armed forces to protect Department of State personnel in Iraq." Abtan Compl. ¶ 31; Albazzaz Compl. ¶ 16. "These mobile armed forces," allegedly referred to as "shooters," Abtan Compl. ¶ 31; Albazzaz Compl. ¶ 16, are allegedly "routinely sen[t]" by Blackwater "into the streets of Baghdad with the knowledge that some of the 'shooters' are chemically influenced by steroids and other judgment-altering substances," Abtan Compl. ¶ 43; Albazzaz Compl. ¶ 21. Specifically, Blackwater allegedly knew at the time of the shooting incidents in question that "25 percent or more of its 'shooters' were ingesting steroids or other judgment-altering substances, yet failed to take effective steps to stop drug use," such as "conduct[ing] any drug[]testing of its 'shooters' before sending them equipped with heavy weapons into the streets of Baghdad." Abtan Compl. ¶ 43; Albazzaz Compl. ¶¶ 22-23. In addition, Blackwater allegedly "has been hiring as mercenaries former military officials known to have been involved in human rights abuses in Chile," Abtan Compl. ¶ 59; Albazzaz Compl. ¶ 38, and has allegedly "hired foreign nationals without regard for the fact that they were forbidden by the laws of their country from serving as mercenaries," Abtan Compl. ¶ 60; Albazzaz Compl. ¶ 39.

The result of these practices, according to the plaintiffs, is "a pattern and practice of recklessness in the use of deadly force" by Blackwater. Abtan Compl. ¶ 41; Albazzaz Compl. ¶ 19. Blackwater forces allegedly "engage in the preemptive and offensive, rather than

---

"Defs.' Mem."), (2) Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint in Case No. 1:07-cv-01831 and the Amended Complaint in Case No. 2:07-cv-02273 (the "Pls.' Opp'n"), and (3) Defendants' Reply in Support of Their Motion to Dismiss for Lack of Venue the Second Amended Complaint in Case No. 1:07-cv-01831 and the Amended Complaint in Case No. 07-cv-2273 (the "Defs.' Reply").

defensive, use of lethal force," Abtan Compl. ¶ 47; Albazzaz Compl. ¶ 27, such as "repeatedly and frequently fir[ing] shots from moving vehicles without stopping to see if Blackwater has killed anyone," Abtan Compl. ¶ 53; Albazzaz Compl. ¶ 32.  Allegedly, one former Blackwater shooter "stated that his 20-person team in Iraq averaged four to five shootings per week." Abtan Compl. ¶ 55; Albazzaz Compl. ¶ 34.

According to the plaintiffs, Blackwater does not discourage its shooters from engaging in this activity.  To the contrary, it allegedly "views its willingness to kill innocent people as a strategic advantage setting Blackwater apart and above other security corporations," Abtan Compl. ¶ 57; Albazzaz Compl. ¶ 36; thus, it "benefits financially from its willingness to kill innocent bystanders," Abtan Compl. ¶ 58; Albazzaz Compl. ¶ 37.  To effectuate this policy, Blackwater allegedly attempted "on one or more occasions . . . to cover up its shooters' killings by offering to pay modest sums to the families of those Iraqis whom Blackwater shooters shot for no reason," Abtan Compl. ¶ 52; Albazzaz Compl. ¶ 31, and "Blackwater shooters and other employees repeatedly fail to report [the] wrongful use of force, and consistently lie about excessive uses of force," Abtan Compl. ¶ 54; Albazzaz Compl. ¶ 32.

The plaintiffs' claims arise out of two such incidents.  First, "[o]n September 9, 2007, heavily-armed Blackwater mercenaries . . . [allegedly] fired, without justification, on a crowd of innocent Iraqi persons in and around Al Watahba Square[,] resulting in multiple deaths and injuries." Albazzaz Compl. ¶ 2.  The decedents whose estates have filed suit in Albazzaz were both allegedly killed in this shooting, id. ¶¶ 4-5, 17, as were "[n]umerous other innocent persons," id. ¶ 17.  The plaintiffs in Albazzaz allege that "Blackwater is responsible" for this incident, and further allege that "[t]he identities of the Blackwater shooters who killed and injured persons on September 9, 2007, are known to Blackwater."  Id. ¶ 18.

The second shooting incident at issue in these civil lawsuits occurred just one week later. Abtan Compl. ¶ 2. Once again, "heavily-armed Blackwater mercenaries" allegedly opened fire "on a crowd of innocent civilians without justification." Id. ¶ 2. And once again, this shooting allegedly "result[ed] in multiple deaths and injuries." Id. Six plaintiffs in Abtan are the estates of individuals who were killed in the shooting; the remaining plaintiffs "were among those seriously injured." Id.

As alleged by the plaintiffs in Abtan, "none of the civilians [were] armed or taking offensive actions against the Blackwater shooters," id. ¶ 34, and "Blackwater shooters were not protecting any State Department official," id. ¶ 36. Indeed, the plaintiffs in Abtan allege that Blackwater shooters were "expressly directed . . . to stay with the official" they were guarding at the time, id. ¶ 37, and that "[o]ne of Blackwater's own shooters tried to stop his colleagues from indiscriminately firing upon the crowd of innocent civilians" without success, id. ¶ 39. The plaintiffs in Abtan allege that "Blackwater is responsible" for this second shooting incident as well, and further allege that "[t]he identities of the Blackwater shooters who killed and injured innocent persons on September 16, 2007, are known to Blackwater." Id. ¶ 40.

The plaintiffs in Abtan filed their initial complaint in this Court on October 11, 2007, and filed an amended complaint on November 28, 2007. The plaintiffs in Albazzaz followed suit with their own complaint on December 19, 2007. The defendants moved to dismiss both of these complaints for lack of venue, but those motions were denied without prejudice when the plaintiffs filed amended complaints in both cases.

In their most recent complaints (the second amended complaint in Abtan; the first amended complaint in Albazzaz), the plaintiffs assert six different causes of action against the defendants: war crimes under the Alien Tort Claims Act (Alien Tort Statute), 28 U.S.C. § 1350

5

(2006), Abtan Compl. ¶¶ 85-90; Albazzaz Compl. ¶¶ 62-67, assault and battery, Abtan Compl. ¶¶ 91-96; Albazzaz Compl. ¶¶ 68-73, wrongful death, Abtan Compl. ¶¶ 97-100; Albazzaz Compl. ¶¶ 74-77, intentional infliction of emotional distress, Abtan Compl. ¶¶ 101-04; Albazzaz Compl. ¶¶ 78-81, negligent infliction of emotional distress, Abtan Compl. ¶¶ 105-08; Albazzaz Compl. ¶¶ 82-85, and negligent hiring, training, and supervision, Abtan Compl ¶¶ 109-11; Albazzaz Compl. ¶¶ 86-88.  The plaintiffs seek not only compensatory damages, Abtan Compl. ¶ 112(a); Albazzaz Compl. ¶ 89(a), but also "punitive damages in an amount sufficient to strip [the d]efendants of all of the revenue and profits earned from their [alleged] pattern of constant misconduct and callous disregard for human life," Abtan Compl. ¶ 112(b); Albazzaz Compl. ¶ 89(b), and "any attorney's fees and costs permitted by law," Abtan Compl. ¶ 112(c); Albazzaz Compl. ¶ 89(c).  The plaintiffs also allege that "venue is proper" in this Court "pursuant to 28 U.S.C. § 1391(a)(3) and § 1391(b)(2)."  Abtan Compl. ¶ 30; Albazzaz Compl. ¶ 15.

    The defendants renewed their requests for dismissal in a consolidated motion filed on April 8, 2008.  In support of that motion, the defendants argue that the plaintiffs cannot establish that this Court is the proper venue for their lawsuit under 28 U.S.C. § 1391(a)(3) because that provision applies only to actions founded completely on diversity of citizenship, which is not the case here.  Defs.' Mem. at 2-3.  They further argue that 28 U.S.C. § 1391(b)(2) does not provide a basis for venue in this Court because this lawsuit does not involve any property located in this jurisdiction and the events giving rise to the plaintiffs' claims did not occur in the District of Columbia.  Id. at 3-5.  The defendants therefore urge the Court to dismiss the plaintiffs' complaints, id. at 10-13, and request in the alternative "that this Court transfer these cases to a court where venue is proper[;] namely[,] [the Eastern District of Virginia]," id. at 13; see also id.

at 5-10 (arguing that the Eastern District of Virginia would be an appropriate venue for the plaintiffs' lawsuits).

The plaintiffs do not contest the defendants' legal arguments regarding venue under § 1391(a)(3). However, they assert that they "are entitled to deference on their forum choice so long as they select a venue permitted by § 1391(b)," Pls.' Opp'n at 6, and argue at length that venue is proper in this Court under § 1391(b)(2) because numerous events relating to the causes of action at issue here occurred in the District of Columbia, id. at 6-10. Alternatively, they contend that they "are entitled to discovery to establish additional facts supporting their forum choice if factual issues raise questions regarding the [p]laintiffs['] chosen venue." Id. at 10. The plaintiffs also oppose transfer of these cases to the Eastern District of Virginia. Id. at 11-13. In reply, the defendants dispute the plaintiffs' assertion of venue under § 1391(b), Defs.' Reply at 1-11, renew their request for dismissal of the plaintiffs' complaints, id. at 14-15, and oppose the plaintiffs' request for venue discovery, which they view as "a way to forestall this Court's dismissal or transfer of these cases," id. at 13.

## II. Standard of Review

As the Court previously noted, the defendants' motion to dismiss or transfer for lack of venue is governed by Federal Rule of Civil Procedure 12(b)(3). "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law for the Court." Modaressi v. Vedadi, 441 F. Supp. 2d 51, 53-54 (D.D.C. 2006). Thus, "[i]n considering a Rule 12(b)(3) motion, the [C]ourt accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Darby v. U.S. Dep't of Energy, 231 F. Supp. 2d 274, 276 (D.D.C. 2002). Ultimately, however, "it is the plaintiff's obligation to

7

institute the action in a permissible forum;" consequently, "the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).

### III. Legal Analysis

Pursuant to 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss or, if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." Id. § 1406(a). By failing to oppose the defendants' argument that this Court is not an appropriate venue for the plaintiffs' lawsuit under 28 U.S.C. § 1391(a)(3), the plaintiffs have conceded this point to the defendants.[5] Thus, the only questions before the Court are whether this Court is an appropriate venue for the plaintiffs' lawsuit under 28 U.S.C. § 1391(b)(2) and, if not, whether the "interests of justice" warrant a transfer of the plaintiffs' lawsuits rather than outright dismissal.

Section 1391(b)(2) provides that for civil actions not founded solely on diversity of citizenship, such an action "may . . . be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The purpose of this statute is to

---

[5] "It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the government, a court may treat those arguments that the plaintiff failed to address as conceded." Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (Walton, J.). The Court's authority to treat unopposed arguments as conceded derives from Local Civ. R. 7(b), which states as follows:

> Within 11 days of the date of service or at such other time as the court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the court may treat the motion as conceded.

(Emphasis added.)

"Courts have interpreted this local rule to apply to specific arguments within a memorandum opposing a motion," United States v. Real Prop., 287 F. Supp. 2d 45, 61 (D.D.C. 2003) (Walton, J.), and the District of Columbia Circuit "'ha[s] yet to find that a district court's enforcement of this rule constituted an abuse of discretion,'" Buggs, 293 F. Supp. 2d at 141 (quoting FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (internal citations omitted)). The Court therefore declines "to act as an advocate for [] the parties and construct their legal arguments on [their] behalf in order to counter those in the motion to dismiss." Real Prop., 287 F. Supp. 2d at 61 (internal citation and quotation marks omitted).

"protect[] a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." Modaressi, 441 F. Supp. 2d at 53. "However, nothing in [§] 1392(b)(2) mandates that a plaintiff bring suit in the district where the most substantial portion of the relevant events occurred, nor does it require a plaintiff to establish that every event that supports an element of a claim occurred in the district where venue is sought." Great Socialist People's Libyan Arab Jamahiriya v. Miski, 496 F. Supp. 2d 137, 142 (D.D.C. 2007) (Walton, J.) (internal citation and quotation marks omitted) (emphasis in original). "Thus, it is no longer appropriate to ask which district is the 'best' venue, . . . or which venue has the most significant connection to the claim." FC Inv. Group LC v. Lichtenstein, 441 F. Supp. 2d 3, 11 (D.D.C. 2006). Instead, "[t]he proper question is whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." Id. (internal citation and quotation marks omitted).

"In tort cases, when determining whether a substantial part of the events or omissions giving rise to the plaintiff's claim occurred or did not occur" in a particular district for purposes of § 1391(b)(2), "the facts that courts focus on include the place where the allegedly tortious actions occurred and the place where the harms were felt." 14D Charles A. Wright et al., Federal Practice & Procedure § 3806.1 (6th ed. 2008). At the same time, "a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." FC Inv. Group, 441 F. Supp. 2d at 11 (internal citation and quotation marks omitted). "Rather, it should review the entire sequence of events underlying the claim." Id. (internal citation and quotation marks omitted).

In their opposition to the defendants' motion to dismiss, the plaintiffs assert four ways in which the District of Columbia has a "substantial connection" to their tort claims. First, the plaintiffs assert that "Blackwater was providing services to the Department of State," and "[t]he relevant Department of State office is located in Washington, D.C." Pl.'s Opp'n at 2. Second, they contend that the defendants "falsely held themselves out to the United States as operating legitimate companies . . . to procure government business." Id. at 3. Third, they point out that "the many Blackwater shootings are being investigated by the Congressional Committee on Oversight and Government Reform." Id. Finally, the plaintiffs note that "Blackwater's actions are being investigated by the United States Department of Justice and the . . . Federal Bureau of Investigation," and that "[t]his investigation is occurring in this District, . . . [t]he Department of Justice has convened the [g]rand [j]ury in this jurisdiction, . . . [and] [t]he [g]rand [j]ury has subpoenaed witnesses to testify in this District." Id. at 4.[6]

The Court is not persuaded that the contractual relationship between Blackwater and the Department of State is alone sufficient to render the District of Columbia a suitable venue for any litigation tangentially connected to that relationship. As the defendants correctly point out:

> Under [the p]laintiffs' theory, any tort claim in any way related to actions by a federal contractor could be brought in the District of Columbia on the theory that "but for" the federal contract, the alleged tort would not have occurred. For example, any inmate in the country who sued a private prison under contract with the federal Bureau of Prisons could bring this claim—no matter what its basis—in the District of Columbia. . . . [Further,] [a]ny case involving a tort committed by any sort of contractor or its employees . . . could be heard in the district in which the initial contract was entered into, even if the contractor, the work, [and] the alleged tort . . . had no relation whatsoever to that district. . . . A plaintiff injured in an automobile accident,

---

[6] The grand jury referenced by the plaintiffs ultimately indicted five former Blackwater employers for their alleged role in the Nisour Square shooting. That case, which is currently pending before another member of this Court, is styled as United States v. Slough, Criminal Action No. 08-360 (RMU) (D.D.C.).

10

moreover, could argue that venue lay in the district where the defendant purchased the car because "but for" that purchase the accident would not have occurred.

Defs.' Reply at 6.

While the site of any contracts between the Department of State and the defendants would be a proper venue for any claims arising out of those contracts, see Wright et al., supra, § 3806.1 (finding venue to be proper in breach of contract actions "where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred"), these are not breach of contract cases, and the plaintiffs are not signatories to any contracts with the defendants. Instead, the plaintiffs' claims all arise from the alleged intentional or negligent failure of Blackwater to properly hire, train, and supervise its employees. The plaintiffs do not allege that any of these activities took place in the District of Columbia. And the events directly leading to the plaintiffs' lawsuits—the alleged wanton shooting of innocent civilians in Baghdad on two occasions—obviously did not occur in the District of Columbia, either. Thus, the contractual relationship between Blackwater and the Department of State does not by itself give the District of Columbia a "substantial connection" to the plaintiffs' claims.

The plaintiffs' reliance on congressional and criminal investigations as a basis for venue is even less colorable. The rules for venue in a criminal offense committed outside the United States are very different from the rules of venue in a civil case arising out of similar circumstances. Compare 18 U.S.C. § 3238 (2006) (permitting "[t]he trial" of such offenses to be held "in the district in which the offender . . . is arrested or is first brought or," if such an offender is not arrested or brought into any district, "in the district of the last known residence of the offender . . . , or if no such residence is known . . . in the District of Columbia"), with 28 U.S.C. § 1391(b) (permitting civil cases not wholly founded on diversity of the parties to be

brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or where "a substantial part of property that is the subject of the action is situated, or," if there is no other available district, (3) "a judicial district in which any defendant may be found"). To hold, as the plaintiffs request, that a proper venue in a criminal case arising out of extraterritorial acts automatically qualifies as a proper venue in a civil case arising out of those same acts would essentially conflate the criminal civil venue statutes, a result manifestly at odds with Congress's intent. Nor is the Court aware of any authority supporting the notion that a congressional investigation somehow renders the District of Columbia an appropriate venue for lawsuits filed by private individuals. If that were the case, virtually any private dispute with public implications that attract congressional attention could be litigated in this jurisdiction. The Court declines to read § 1391(b)(2) in such a grossly overbroad manner.

The Court is also skeptical of the plaintiffs' argument that venue is appropriate in the District of Columbia because the defendants may have misled the United States into thinking that the Blackwater companies were reputable businesses. Such an assertion is plausible only if the defendants have engaged in acts of obfuscation (e.g., suppressing or concealing incriminating evidence) or conspired to do so in this jurisdiction. Under those circumstances, a credible case could be made that the defendants engaged in acts in this jurisdiction (suppressing or concealing incriminating evidence or conspiring to do so) that enabled Blackwater to engage in the tortious conduct alleged in these cases. Cf. Freeman v. Fallin, 254 F. Supp. 2d at 57 (noting that "[c]ourts have found venue proper in Bivens actions where substantial conspiring, planning, or supervision of an event occurred, even if the event itself took place in another judicial district").

But that is not what the plaintiffs allege. They simply allege that "[t]he United States paid Blackwater . . . substantial sums based on Blackwater's misrepresentations." Abtan Compl. ¶ 73; Albazzaz Compl. ¶ 51. The gist of this argument is that because the District of Columbia is the seat of the United States government and the defendants allegedly misrepresented themselves to the government, the District of Columbia is somehow an appropriate venue for claims raised by third parties that were harmed in an entirely different location by those same defendants. But alleging that an entity located in the District of Columbia has been misled is not the same thing as asserting that acts of misrepresentation enabling tortious conduct abroad occurred in the District of Columbia. Thus, if the Court were to limit its inquiry to the facts alleged in the plaintiffs' complaints, it would conclude that the allegations did not suffice to establish that the District of Columbia is an appropriate venue for the plaintiffs' claims.

However, because lack of venue is an affirmative defense, "the plaintiff[s] [are] not required to include allegations showing that the district in which the action has been brought is one of proper venue." Wright et al., supra, § 3826; see also SEC v. Ernst & Young, 775 F. Supp. 411, 412 (D.D.C. 1991) ("The plaintiff need not plead venue; rather, lack of venue is an affirmative defense."). And while the plaintiffs' pleadings and their papers filed in response to the defendants' venue challenge are too vague to support an assertion of venue in this jurisdiction, the plaintiffs suggest at one point in their opposition to the defendants' motion that the defendants "engaged in a series of communications with Department of State and other government officials located in the District of Columbia designed to procure and keep their government business." Pls.' Opp'n at 9. If this assertion is true, and if the "communications" in question misrepresented Blackwater's conduct in a manner that permitted Blackwater to train, regulate, and discipline its employees in the manner alleged by the plaintiffs, then these

13

"communications" might be sufficient to create a "substantial connection" between the District of Columbia and the plaintiffs' tort claims that would justify litigation of those claims in this venue under § 1391(b)(2).  See FC Inv. Group, 441 F. Supp. 2d at 11 (holding that "[t]he 'substantial part of the events or omissions' test is satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action" (internal citation and quotation marks omitted)).

In their attempt to mount a challenge to the defendants' venue challenge, the plaintiffs request venue discovery in their opposition to the defendants' motion to dismiss; however, they have not filed a formal motion requesting such relief as required by Federal Rule of Civil Procedure 7(b)(1).  The Court will therefore hold in abeyance the defendants' motion to dismiss and the plaintiffs' motions for leave to file amended complaints so that the plaintiffs have an opportunity to either supplement their opposition to the defendants' motion with evidence supporting their assertion that the defendants "engaged in a series of communications with Department of State and other government officials located in the District of Columbia designed to procure and keep their government business" by misrepresenting the manner in which Blackwater hired, trained, and supervised its employees or seek discovery from the defendants on this issue.  If the plaintiffs have not filed a supplemental opposition with such evidence attached or filed a motion for venue discovery on this issue within thirty days of the entry of this order, or if the plaintiffs seek venue discovery and the Court concludes that, notwithstanding the conclusions reached in this memorandum opinion, such a request must be denied, then the Court will terminate the stay of the defendants' motion and decide the motion accordingly at that time.[7]

---

[7]  The Court will defer any decision as to whether the "interests of justice" require the transfer of this case rather than its dismissal until it is clear that venue in this Court is improper.

14

## IV. Conclusion

"[I]t is entirely proper for this Court to hear [the p]laintiffs' claims so long as they bear a substantial connection to the District of Columbia." FC Inv. Group, 441 F. Supp. 2d at 12. It is unclear, however, from the plaintiffs' pleadings and memoranda of law whether such a connection exists in these cases. The Court would therefore be well within its discretion to simply grant the defendants' motion to dismiss or transfer and relieve itself of further consideration of this matter. But if the plaintiffs had formally requested venue discovery on the issue of the defendants' purported written submissions transmitted to this jurisdiction at the outset of the case, they may well have satisfied the Court's concerns about the ambiguity of their assertions. To penalize the plaintiffs for this failure on their part would unduly elevate the formal requirements of the Federal Rules of Civil Procedure over the substantive merits of the plaintiffs' position, particularly given the plaintiffs' request for venue discovery in their opposition to the defendants' motion.

The Court will therefore provide the plaintiffs with an additional opportunity to demonstrate the merits of their position in its fullest form. If the plaintiffs fail to adduce record evidence or seek venue discovery, or if the Court, having reviewed the plaintiffs' motion for leave to take venue discovery, concludes that discovery is improper for some reason, then the Court will not hesitate to resolve forthwith the defendants' motion. But the Court must make certain that the District of Columbia is not the proper venue for these cases before it dismisses or transfers them. The Court will therefore stay the defendants' motion to dismiss or transfer and the plaintiffs' motions for leave to file amended complaints for the limited purposes set forth above.

**SO ORDERED** this 27th day of April, 2009. [8]

REGGIE B. WALTON
United States District Judge

---

[8] This memorandum opinion accompanies an earlier order issued by the Court (1) staying the defendants' motion to dismiss or transfer, (2) staying the plaintiffs' motions for leave to file amended complaints, (3) directing the plaintiffs to file their supplemental opposition to the defendants' motion to dismiss or transfer or motion for leave to take venue discovery within thirty days of the date on which the order went into effect, and (4) specifying that the order would be stayed until the Court issued this memorandum opinion. Thus, the earlier order entered by the Court is no longer stayed as of the date of the issuance of this memorandum opinion.